CRISWELL, RESPONDENT, v. MONTANA CENTRAL RAILWAY COMPANY, APPELLANT.

[Submitted September 27, 1895. Decided November 25, 1895.]

RAILROAD COMPANY—*Evidence.*—On an issue as to whether the defendant or another company was operating that part of a railroad upon which plaintiff was injured, evidence that he was employed by the authorized officers of the defendant company, that he was paid by the defendant, and that the posted orders and bulletins at the stations on the road showed that the defendant, through its officers, was operating the road, is sufficient to sustain a verdict against the defendant company, upon such issue.

MASTER AND SERVANT—*Negligence.*—It is negligence for a conductor to run his train into the yard limits of a station, without a head light and without sending a flagman ahead to see if the track is clear before entering.

SAME—*Same—Fellow servants—Statutory construction.*—By the enactment of section 697, Fifth Division of the Compiled Statutes, providing that "the liability of the corporation to a servant or employe acting under the orders of his superior, shall be the same in the case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger," it was the legislative intent to modify the common law rule of non-liability of the master to his servant for consequences of the negligence of a fellow servant in a common employment, and. by establishing the principle of a difference in the grade of employes engaged in a common employment, to give a right of action to an employe, who. without fault or negligence himself. is injured by the wrongful act of a superior servant, and whether acting at the time under the orders of the negligent superior or not.

*Appeal from Eighth Judicial District, Cascade County.*

ACTION for damages for personal injuries. The case was tried before BENTON, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

This is an action for damages for personal injuries. Plaintiff alleges substantially in his complaint that about the 5th day of November, 1892; he was employed by defendant as head brakeman on its freight train; that the defendant was at the time operating a railroad, and running its freight trains over its road from Havre, in Choteau county, westward to and beyond the city of Great Falls, in Cascade county, Mont.; that it was the duty of the defendant to supply its train and engine with a proper headlight, running in the night time; that the

defendant failed and neglected to so supply the train and engine attached thereto, on which plaintiff was employed and working, with such headlight; that it was the duty of the defendant to see that its train, before entering its yard limits at the city of Great Falls, came to a full stop, and to send out a flagman to ascertain if the track was clear for the entrance of the train upon which plaintiff was so employed; that the defendant neglected and failed to do any of said things, and failed and neglected to give any signal or notice of its entrance into its yard limits at the city of Great Falls; that it was the duty of the defendant not to permit any switch engine to be upon its main track in said yard at said time, or to permit such switch engine to run at a greater rate of speed than six miles per hour within said yards, and that it was the duty of the defendant to provide said switch engine with competent and efficient employes and operatives; that said defendant wholly failed and neglected to perform its said duties, and negligently permitted a switch engine to be upon the said main track at the time the train upon which plaintiff was employed was entering the yard, and negligently permitted said switch engine to be run at a high and dangerous rate of speed, and negligently had in charge of and operating said switch engine an engineer, who was incompetent, and that all of said facts were known to defendant; that while plaintiff was engaged in the performance of his duties as such brakeman, in accordance with the directions given by defendant, said switch engine came through the yards, upon the main track, at a high and dangerous rate of speed, and ran into and against the train upon which the plaintiff was employed, crushing said train, and throwing the plaintiff therefrom, and that by reason thereof plaintiff sustained the injuries for which this suit is brought.

The defendant, in its answer, denies that it was the owner of or operating a railroad from Havre westward to the city of Great Falls at the time and as alleged by plaintiff; denies that plaintiff was in its employ at the time he was injured, or at all; but alleges that the plaintiff was in the employ of the Great Northern Railway Company when he received his in-

juries, and alleges that the switch engine mentioned in the complaint was being operated by the Great Northern Railway Company, and that the engineer and employes in charge thereof were also in the employ of said Great Northern Railway Company. Defendant alleges that when the train on which plaintiff was employed left Havre for Great Falls it was supplied with a proper headlight, but admits that before the train arrived at the yard limits at Great Falls the headlight became broken, defective and darkened, but denies that it became so by the negligence of the defendant, and says that before the arrival of the train at Great Falls, and before the collision with the switch engine, it had been put in as good condition as possible, and says that the headlight at the time of the collision was sufficient to give notice to engineers and others operating said switch engine of the presence of said train on the main track. The defendant admits the collision mentioned in the complaint, but says it was caused wholly by the negligence of the engineer in charge of the switch engine, who, it alleges, was a fellow servant of plaintiff, in the same common employment. The defendant also alleges that the injuries of plaintiff were the result of his own carelessness and negligence.

The new matter set up in the answer is denied by plaintiff's replication. The case was tried with a jury, who returned a verdict for the plaintiff. The judgment was rendered for the plaintiff in accordance with the verdict. From this judgment, and an order denying a new trial, this appeal is prosecuted.

*A. J. Shores*, for Appellant.

I. The trial court held that section 697, page 817, Compiled Statutes, had the effect to abrogate the doctrine of the common law that the master is not liable to a servant for the injuries caused by the negligence of a fellow servant. As a result of this view, the court declined to order a nonsuit on motion of the defendant, and refused to give certain instructions requested by the defendant, especially those numbered 1, 11, 12 and 18. The request to charge numbered 11 seems to

be an unexceptionable statement of the fellow servant doctrine. The court in giving this instruction modified it by striking out the words: "including his own negligence or unskillfulness, and that of his fellow servants who are engaged in the same line of duty." (*T. W. & W. Ry. Co.* v. *Durkin*, 76 Ill. 395: Sackett's Instructions to Juries, page 422.) Request No. 12 was a request to charge that an engineer and brakeman engaged upon the same train are fellow servants, and the master not liable for the injury suffered by one through the negligence of the other, if the master himself is without fault. That an engineer and brakeman are fellow servants is established by numerous decisions. (*Evans* v. *Louisville, N. O. & T. Ry. Co.*, 12 South. Rep. 581; *South Florida Ry. Co.* v. *Price*, 13 South. Rep. 638; McKinney on Fellow Servants, § 129, p. 278; *Miller* v. *C. & G. T. R. R. Co.*, 51 N. W. Rep. 370; *Pittsburgh & C. R. R. Co.* v. *Ranney*, 5 Am. & Eng. R. R. Cases 353.) That the engineer of the switch engine and the plaintiff are fellow servants is not to be doubted. (*Wright* v. *N. Y. C. & H. R. R. Co.*, 25 N. Y. 562; *B. & O. R. R. Co.* v. *Andrews*, 1 U. S. App. 633. *Randall* v. *Ry. Co.*, 109 U. S. 478; *R. R. Co.* v. *Deviney*, 17 Ohio St. 198; *Reylga* v. *K. C., Ft. S. & G. R. R. Co.*, 19 S. W. Rep. 1116; *McMasters* v. *Ill. Central R. R. Co.*, 4 South. Rep. 59.) It has, I think, been uniformly held in the United States circuit court for this district, that this section of the statute applied only to domestic railway corporations. "The corporation" referred to in the section being a corporation formed under the provisions of the act in which this section occurs, which was an act for the incorporation of railway companies in this state. This section was a part of the act of May 7th, 1873. Chapter 25, as it appears in the Compiled Statutes of 1887, embraces not only this act, but certain other statutes subsequently enacted, touching both domestic and foreign companies. It would be difficult to suggest any good reason why such a rule of liability should be established in the case of domestic corporations and not be made to apply by the legislature to a foreign company; but inasmuch as the section is found only in

an act which clearly relates to companies incorporated under its provisions, the conclusion would seem to be inevitable that "the corporation" referred to in the section is a corporation formed under the terms of the act in which the section occurs. Assuming, then, that at the time of its enactment this section applied only to railway corporations under the laws of this state, it is to be observed that there is nothing in the terms of subsequent legislation by which foreign companies were permitted to extend and operate their line within this territory, subjecting such companies to the liability imposed by section 697. It would seem to follow that at the time of the adoption of the constitution the domestic corporations, such as the Montana Central, Montana Union and some others, were operated subject to the liability created by section 697, while foreign companies, such as the Great Northern, Northern Pacific and others enjoyed an immunity for such liability. It is provided by section 11, of Article XV, of the constitution that "no company or corporation formed under the laws of any other country, state or territory, shall have or be allowed to exercise or enjoy, within this state, any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state." The effect of section 697 was to impose a burden upon domestic corporations, from which foreign corporations were free, thereby creating a distinction between the two companies, by which there was a discrimination against the domestic corporation. If the court should be of the opinion that section 697 is still in force, it will be necessary to construe it, at least to the extent of determining its application to this case. Two constructions may be advanced which differ widely, either of which is capable of being supported by fair argument.

II. The word "superior" used in this section has two meanings that may be regarded as admissible for the purposes of construction. In the first construction it is suggested that the word "superior" is the equivalent of vice-principal. In the law of master and servant, when uninfluenced by legislation, there are fellow servants and vice-principals. The vice-

principal is entrusted with the discharge of some personal duty owing by the master to the servant, the performance of which cannot be delegated by the master so as to relieve him from the consequences of its imperfect execution. Under the great weight of authority, and especially the later and best considered decisions, those ·duties, which the master must perform are the following : He must use ordinary care to provide a safe place in which to work; to provide suitable and proper machinery and appliances with which to do the work; and to select competent and fit servants. (*Baltimore & Ohio R. R. Co.* v. *Baugh,* 13 Sup. Ct. Rep. 921.) And such servants of the master as are charged with the duty of discharging for the master these personal duties, or obligations to the other servants, are, in the discharge of such duties, representatives of the master, or vice-principals, and not fellow servants with those to whom such duties are owing. And the vice-principal is, within the meaning of the law of master and servant, the only true "superior" among the servants employed. In the Baugh case the supreme court of the United States considering by what test or rule the liability of the master is to be determined, says : "Rightfully this : There must be some personal wrong upon the part of the master, some breach of positive duty on his part. If he discharges all that may be called positive duties and is himself guilty of no neglect, it would seem as though he was absolved from all responsibility, and the party who caused· the injury should be himself held responsible." See also the following cases where this distinction is stated· and applied : Wood on Master and Servant, §§ 438, 431, 436, 437; *Flike* v. *B. & A. Ry.,* 53 N. Y. 549; 3 Woods' Railway Law, 1499; *McElligott* v. *Randolph,* 22 Atl. 1095; *Sullivan* v. *N. Y. C. & H. R. R. R.,* 25 Atl. 711; *Justice* v. *The Penn Co.,* 30 N. E. 303; *Cushman* v. *Chase,* 31 N. E. 4; 24 Am. Law Review, 175; *Ell* v. *N. P. R. R.,* 48 N. W. 223; *Lundavall* v. *Wood,* 41 Minn. 212; *Laughlin* v. *State,* 11 N. E. 372; *City of Minneapolis* v. *Lundin,* 58 Fed. 525; *What Cheer Coal Co.* v. *Johnson,* 56 Fed. 810. The state of the law at the time of the enactment

should always be kept in mind. The legislature must be presumed to have legislated out of consideration of, and because of, the then existing condition of the law, and the terms used in the statute, if the meaning is not perfectly obvious, should be construed in the light of the legal doctrines then prevailing. Hence if we find that at the time of the enactment of the statute there was one class of employes who were, in a legal sense, "superior" to other servants of the same master, and another class of servants with no legal relation of superiority or inferiority as amongst themselves, but constituting fellow servants, in a legal sense, we should consider that the word "superior" was used in the statute to indicate a recognized legal relationship and designate that class of employes who were then known and held to be, legally speaking, superiors to the other servants of the same master in the same employment. That is, to apply this reasoning to the case in hand, the word "superior" should be held to apply to the vice-principal. Upon this view of the meaning of the word superior the entire section becomes intelligible. The intent was not to alter the fellow servant doctrine at all, but to require a higher degree of diligence of the company in the discharge of its personal duties. The phrase "acting under the orders of" may be regarded as merely descriptive of a class of persons, to-wit: those subject to the orders of or controlled by, the vice-principal. If used in this sense, then the class of persons thus designated, together with the class of persons afterwards referred to as employes "not appointed or controlled" by such vice-principal, would embrace all servants of the company who could be injured through the negligence of a fellow servant or vice-principal. So construing the several provisions of this section, the idea above advanced, viz : that the legislative intent was to increase the degree of diligence required of the master in the discharge of the personal duties above referred to, and that there was no other intent, is well supported, and harmonizes with all the terms of the section.

III. There is another construction of this section which may be worthy of consideration, and which is based upon the

use of the word "superior" not in the legal sense of vice-principal, but in its popular meaning, viz : as the designation of a person having the right to control and direct the services of others, and to whose orders obedience is due. This relationship between the servants of a common master may exist under the common law, without any liability arising upon the part of the master for the negligence of such a superior. The great weight of authority is to the effect that the mere control by one servant of another does not destroy their legal relationship as fellow servants. (*Baugh* v. *B. & O. Ry. Co.*, 13 Sup. Ct. Rep. 920; 3 Woods' Railway Law, 1499, and cases cited.) If it was the legislative intent to make the master liable for the negligence of a superior servant, without regard to the nature of the duties to be performed by the superior servant, then under the operation of this section, the company becomes liable for the slightest negligence upon the part of such superior servant which results in injury to another servant of the company, "acting under the orders" of such superior. Upon this view of the statute it cannot be held reasonable to extend to any case where the injured servant was not, at the time of receiving the injury, engaged in the execution of the orders or the special directions of the negligent superior. Since this new liability is made to depend not upon any natural obligation or duty, nor upon any one of the personal duties of the master, but upon the fact that one servant controls or directs the acts of the other, the liability must be held to exist only where the injury received results from this relationship, and the injury could result from the relationship only in a case where the superior servant was negligent in the exercise of the powers of control or direction conferred upon him. Superior servants of the class now under consideration, are usually under obligation to perform other duties or services, which do not involve the exercise upon their part of this power of control. In the discharge of such other duties, they are merely fellow servants with others similarly employed and it cannot be presumed, in the absence of some very clear declaration to that effect, that the legislature intended to create a

liability for their negligent acts, not growing out of, or being in any way connected with, their character as superiors. Since the liability of the company is made to depend by this section upon the relationship existing between the superior and inferior servant, and arises only where there is a neglect of default upon the part of the superior servant in the exercise of the powers growing out of this relationship, the servant receiving the injury, must, at the time as above stated, be acting in obedience to orders or directions given by the superior, and upon this view, it was the evident intent of the legislature that the company should be liable for the neglect of such a superior in any case where any servant of the company, whether appointed or controlled by such superior or not, was in fact at the time of receiving the injury executing his orders. In *Evans* v. *L. N. O. & T. Ry. Co.*, 12 South. Rep. 581, it was held that where a brakeman was injured by the negligence of the engineer, who had signaled for brakes, and while they were being applied caused a movement of the train without proper warning whereby the brakeman was injured, the engineer was not the superior officer of the brakeman with the right to control his services. It will thus be seen that if the first construction suggested be adopted and the word ''superior'' regarded as the equivalent of vice-principal, the fellow servant doctrine is not in any respect modified by section 697; while if the construction last suggested be adopted, the fellow servant doctrine is modified to this extent, and no further, viz: Where a servant receives an injury because of the negligence (slight) of another servant, having the right to direct and oversee the performance of work, and the negligence arises in the exercise of the power of control or right of direction, the master becomes liable. In the case of *N. P. R. R. Co.* v. *Mase*, 63 Fed. 114, construing this section, the court adopts the view previously expressed by Judge Shiras in the case of *Ragsdale* v. *N. P. R. R. Co.*, 42 Fed. 388. In the Ragsdale case the plaintiff, a fireman, lost a leg in consequence of a collision between two trains. The original answer of the defendant charged that the collision was caused by the negligence

of the conductor in charge of the train which collided with the train upon which the plaintiff was employed. The Court over-ruled the demurrer, basing its decision upon two grounds. First, holding that under the doctrine of the Ross case (112 U..S. 377) the *fireman and conductor employed upon different trains* were not fellow servants and that the negligence of the conductor rendered the company liable; and second, that the company was liable under the terms of section 697, the acci-dent having happened in Montana. The first ground upon which the company was held liable is clearly bad under the doctrine announced in *Randall* v. *Railway Company*, 109 U. S. 478, and the views of Judge Shiras upon that point have since been expressly overruled in *Baltimore & Ohio Ry. Co.* v. *Andrews*, 50 Fed. 729; *Newport News & M. V. Ry.* v. *Howe*, 52 Fed. 383; *N. P. R. R. Co.* v. *Hambly*, 14 S. C. Rep. 983. In the language of the circuit court of appeals in *St. Louis, I. M. & S. Ry. Co.* v. *Needham*, 63 Fed. 1, 2: "So far as the cases of  *  *  *  *  and *Ragsdale* v. *Rail-road Company*, *supra*, hold that under the general law a con-ductor or employe on one train, whose negligence causes the injury of an employe of the same master on another train, is not the fellow servant of the latter, it is sufficient to say that they have now been so universally disapproved by repeated decisions of the national courts and by the late decisions of the supreme court that they are no longer authority.

IV. The plaintiff claims that the evidence had a tendency to show negligence upon the part of three persons in the em-ployment of the railway company, viz: Engineer Banker, Engineer Johnson, who had charge of the extra freight, and Conductor Schnader, of the extra freight. After the court had refused a motion for a nonsuit, the defendant asked for in-struction No. 12, defining the legal relationship existing between this engineer and the plaintiff. The instruction did this in a perfectly clear manner and it was error to refuse it. There was no neglect shown on the part of the master to pro-vide machinery and appliances. The engine appears to have left in the morning fully equipped with a proper headlight.

The breaking of the chimney was an accident occurring in the course of the trip, which could have been easily remedied. That the making of such slight repairs is a mere matter of detail in the discharge of the servant's work, and may properly be left to the servant to perform, and that the master is not liable to a fellow servant injured through a neglect of this character, is the doctrine, I believe, of all the cases. (*Miller* v. *C. & G. T. R. R. Co.*, 51 N. W. Rep. 370; *L. N. O. & T. Co.* v. *Petty*, 7 South. Rep. 351; *Creagan* v. *Martson*, 27 N. E. Rep. 852; *McGee* v. *Boston Cordage Co.*, 1 N. E. Rep. 745; *Weber* v. *Piper*, 17 N. E. 216; *Faber* v. *Carlisle Mfg. Co.*, 17 Atl. Rep. 521; *McKennin* v. *Norcross*, 20 N. E. Rep. 183; *Thieleman* v. *Moore*, 37 N. W. Rep. 765; *Ling* v. *St. P. M. & M. Ry. Co.*, 52 N. W. Rep. 378; *Kehre* v. *Arnold*, 52 N. W. Rep. 740.)

*H. N. Blake, J. A. Largent* and *Geo. F. Shelton*, for Respondent.

I.   The question of fact as to which company was operating the road having been fairly left to the jury and there being evidence to uphold their verdict in that respect, the appellate court will not disturb that verdict.   The cases in support of this proposition are numerous and satisfactory.   (*Ft. Scott W. & W. Ry. Co.* v. *Fontnoy*, 32 Pac. 904; *Northeastern Ry. Co.* v. *Barnett*, 15 S. E. 492; *Barnett* v. *Northeastern Ry. Co.*, 13 S. E. 646; *Gulf C. & S. F. Ry. Co.* v. *Dorsey*, 66 Tex. 148; *Ry. Co.* v. *Jones*, 75 Tex. 151; *Snow* v. *Housatonic Ry. Co.*, 8 Allen 441; *Central R R. & Banking Co.* v. *Passmore*, 15 S. E. 760; *Pennsylvania Co.* v. *Ellitt*, 24 N. E. 559; *Lockhart* v. *Little Rock & M. R. Co.*, 40 Fed. 631.)   The foregoing authorities also clearly establish the principle that if the undisputed facts were as claimed by defendant, both the defendant company and the Great Northern Railway Company would be liable to plaintiff, and he had his option to sue either one or both, and a joint wrongdoer cannot complain that his companions in wrong escape liability as a ground for a new trial.

II.   The intent of this statute is plain.   It is declared in substance that servants of different grades are not fellow servants; that the servant giving orders is of a grade superior to that of the servant receiving them; and that a railroad company is liable to an employe for injuries sustained while acting under the orders of any employe of a superior grade, or of an employe authorized to give orders, through the negligence of such latter employe.   The use of the phrase, "as if such servant or employe were a passenger," defines the highest degree of the care and diligence which must be shown by the railroad corporation towards its employes.   The supreme court of Montana has established the duty of common carriers to passengers.   (*Ryan* v. *Gilmer*, 2 Mont. 523, approved in *Kennon* v. *Gilmer*, 5 Mont. 271.)   The law applicable to negligence in these cases, laid down in *Kennon* v. *Gilmer*, *supra*, was affirmed on appeal by the supreme court of the United States. (131 U. S. 25, 26.)   The court in *Kennon* v *Gilmer* relied on the case of *Indianapolis R. R. Co.* v. *Horst*, 93 U. S. 291, a leading case on the subject.   This statute has been construed in the circuit court of the United States, by Judge Shiras, in *Ragsdale* v. *Northern Pacific R. Co.*, 42 Fed. Rep. 383, 386. It was held that a fireman was not a "co-employe with the conductor of a train by whose negligence in controlling the movements of his train a collision was caused with the engine upon which the plaintiff was acting as fireman."   Counsel for appellant maintains that the above statute confers special privileges upon domestic corporations, and discriminates against foreign corporations, and is therefore in conflict with the constitution of the state. (Constitution, art. XV, § 11.)   We are unable to see the force of this argument.   We do not think that foreign corporations regard this statute as a right or privilege to be desired or enjoyed by them.   The question before the court relates solely to its effect upon the appellant, a domestic corporation.   The power of the states to pass enactments of this nature has been vindicated by the courts. (*Missouri R. R. Co.* v. *Mackey*, 33 Kan. 298; affirmed, 127 U. S. 205, 210; *Minneapolis R. Co.* v. *Beckwith*, 129 U. S.

32.)   The meaning of this statute can be readily understood when the court reviews the decisions of the tribunals which were modified by its terms.   The doctrine, commonly called "the fellow servants' rule," was first announced in England about fifty years ago in *Priestly* v. *Fowler*, 3 Mees. & Welsb. 1.   The earliest cases in the state courts, affirming these views, are *Murray* v. *S. C. R. R. Co.*, 1 McMullan 385, and *Farwell* v. *B. & W. R. R. Co.*, 4 Met. 49.   "Comparatively recent legislation in several of the states of the Union has in some degree modified for us in this country the rule of non-liability which the courts of every jurisdiction, as we have seen, have uniformly declared.   In   *   *   *   Montana   *   *   *   statutes, the substance of which is set out in the notes, have been passed, under the wholesome operation of which the old rule of non-liability is practically abrogated. Except in California and Dakota, it may be said that in each of the states just mentioned the old rule is entirely abandoned, and an adequate remedy provided by the statutes for the proper protection of railway employes."   (Beach on Contributory Negligence, § 379.)

III.   Five distinct grounds of negligence are presented in the proof, which were submitted to the jury, and the facts as detailed by plaintiff's witnesses are undisputed, as defendant offered no evidence upon the question of negligence.   (1) The failure of the company to provide a proper headlight for the engine.   This was a direct breach of duty on the part of the defendant to its employes, and if injury resulted to them through this it would be liable for the consequences of its neglect.   (2) The failure of the conductor of the freight to wire for permission to come in without a headlight.   This was the negligence of the company, the conductor being a vice-principal.   (*Railroad Co.* v. *Ross*, 112 U. S. 377; *Railroad Co.* v. *Baugh*, 149 U. S. 387.)   (3) The failure of the train dispatcher to accurately report to the yard master the time when the extra freight would arrive.   This was the negligence of the company, as the train dispatcher was not a fellow servant, but a vice-principal.   (*Northern Pacific R. Co.* v. *Char-*

*less,* 51 Fed. 569; *Lewis* v. *Seifert,* 116 Pa. St. 628.) (4) The failure of the conductor of the freight train to order out a flagman when he arrived at the yard limit to see that the track was clear. This negligence of the conductor was the negligence of the company. (*R. R. Co.* v. *Ross, supra.*) (5) The reckless and negligent conduct of the engineer Banker in bringing about the collision by being upon the main track and running at a high and dangerous rate of speed. If, as claimed by defendant, Banker was in the employ of the G. N. Ry. Co. and not of the defendant, then Banker and plaintiff could not be fellow servants. (*Carroll* v. *Minn. Val. R. R.,* 13 Minn. 18; *Sawyer* v. *R. & B. R. R. Co.,* 27 Vt. 370; *C. R. R. Co.* v. *Armstrong,* 49 Pa. St. 186.) The jury having found under the instructions of the court that Banker was an employe of the defendant, and it further appearing that Banker was reckless and wanting in prudence, the defendant having suspended him previously for improper conduct, the defendant had failed to comply with the duty imposed upon it by law, to select and retain servants who were fitted and competent for the service, and the liability of the defendant was the same whether it totally failed to provide persons to perform the duty, or provided those who were incompetent and unskillful. (*Northern Pacific R. R. Co.* v. *Herbert,* 116 U. S. 642; *Northern Pacific R. R. Co.* v. *Mase,* 123 U. S. 710.) The duty of a railroad company to furnish its employes with safe and reliable machinery and appliances adequate to the service in which they are employed, and competent and skillful co-employes cannot be delegated to another servant so as to exempt itself from liability for injuries caused by its omission. Nor will this negligence of a fellow servant excuse the company from liability to a co-servant for an injury which would not have happened had the proper machinery been furnished, and it was the province of the jury to weigh the evidence and determine from all the facts before them whether the defendant was negligent in the respects above named. (*N. P. R. R. Co.* v. *Charless* (C. C. A.), 51 Fed. 562; *Hough* v. *Ry. Co.* 100 U. S. 213; *R. R. Co.* v. *Ross,*

112 U. S. 377; *R. R. Co.* v. *Herbert,* 116 U. S. 642; *Ford*
v. *R. R. Co.,* 110 Mass. 240; *Railroad Co.* v. *Young,* 49
Fed. 723.) It is now settled law that the negligence of a fel-
law servant is no bar to an action by another servant when
negligence of the master has also contributed to the injury of
the latter. (Shearman & Redfield on Negligence § 89; *Mc-
Mahon* v. *Henning,* 1 McCrary 516; *Cappens* v. *N. Y. Cen-
tral & H. R. R. Co.,* 122 N. Y. 557.)

PEMBERTON, C. J.—The defendant contends that the court
erred in submitting to the jury the question whether the de
fendant or the Great Northern Railway Company was operat
ing that part of the railroad involved in this controversy at the
time plaintiff was injured, and that, the court having submit-
ted the question, the evidence did not warrant the finding of
the jury that the defendant was operating it. This was an is-
sue raised by the pleadings. The plaintiff alleged in his com-
plaint that the defendant was operating the road, and the de-
fendant, in its answer, denied it, and alleged affirmatively that
the Great Northern Railway Company was operating the line
at the time of the injury. So we think there was not only no
error in submitting this question to the jury, but that, under
the pleadings, the court was required so to do. And in this
connection it is proper to remark that the court submitted it
most favorably to the defendant in the instructions given.

The record discloses some conflict in the evidence upon
which the jury acted in arriving at the conclusion that the de-
fendant was operating the road at the time in controversy.
But it seems to be unnecessary to notice at length this conflict
in the evidence. It is evident that the plaintiff was employed
by the authorized officers of the defendant company; that he
was paid by the defendant for his services; that the posted or-
ders and bulletins in the bulletin books at the stations on the
road showed that the defendant was operating the road, through
its officers, at the time in controversy. It may be true
that there was some private arrangement between the two com-
panies by which the defendant was operating the road for the

Great Northern Railway Company. If so, it does not appear that the plaintiff had any knowledge thereof; nor do we think he should be bound thereby, in view of the uncontradicted fact that he was employed and paid by the defendant, and that so many material facts and circumstances disclosed by the evidence indicated to him and the public that the defendant was operating the road.

We are of opinion that there is sufficient evidence to support the verdict in this respect. And besides, the district court passed upon this question on the motion for a new trial, and we see no abuse of discretion in its ruling to justify us in reversing its action. We think it clearly appears that the injuries received by plaintiff resulted from the negligent manner of operating the train on which he was employed.

The train had no headlight, or at least no sufficient one. The conductor, knowing the defective condition of the headlight, should have wired from Floweree, a station on the road, to Great Falls, the headquarters, for permission to bring in his train without one. The conductor, on arriving at the yard limits at Great Falls without a headlight, should have sent out a flagman to see that the main track was clear before entering. The evidence warranted the finding of the jury that there was negligence. The question whether these acts were the negligent acts of the defendant, or whether the defendant is responsible for such acts of negligence, will be discussed hereafter.

Having arrived at the point and conclusion that plaintiff was injured as a result of the negligence of the persons in charge of the train on which he was employed, we think it unnecessary to discuss the questions raised as to the negligence of the engineer of the switch engine which ran into the train on which plaintiff was employed, and which caused the collision from which his injuries resulted, especially so as it is inferable from the evidence that there would not have been a collision if the train on which plaintiff was working had been supplied with a headlight. It is fair to conclude from the evidence that the engineer of the switch engine could and would

have seen the train on the main track which he ran into if it had had a headlight. This strengthens our view that plaintiff's injuries are attributable to the negligence of the persons in charge of the train on which he was employed.

The really serious and important questions which confront us on this appeal are those involved in the settlement of the law applicable to the case by the district court. The defendant requested the court to give the jury the following instructions:

"(11) Where a person enters into the service of the railroad company he thereby undertakes to run all the ordinary risks to the employment, *including his own negligence or unskillfulness and that of his fellow servants who are engaged in the same line of duty*, provided the company has taken reasonable care and precaution in engaging and retaining competent servants to discharge the duties assigned to them.

"(12) If you believe from the evidence that at the time of the accident in question the plaintiff was in the employ of the defendant as a brakeman on one of its freight trains, and that while so employed, and in the line of his duties, he received an injury resulting from the negligence or want of ordinary care of the engineer in charge of the locomotive which was drawing the train upon which the plaintiff was employed, then the court instructs you, as a matter of law, that the plaintiff and such engineer were fellow servants in the same grade or line of service within the meaning of the law; and the defendant, if otherwise without fault, would not be liable for such injury."

The court modified the first of these instructions by striking out the words in italics, and refused the second altogether. We presume the court struck out of the first instruction the words "including his own negligence or unskillfulness" for the reason that the instructions given by the court fully, and favorably to the defendant, covered the ground of the plaintiff's own negligence and unskillfulness. The court struck out of said instruction the words, "and that of his fellow servants who are engaged in the same line of duty," and refused the

second instruction, on account of the court's view of the law governing the case. This action of the court is assigned as error.

The action of the court in respect to these instructions was confessedly based upon the opinion that section 697, p. 817, Comp. St. 1887, which reads as follows: "That in every case the liability of the corporation to a servant or employe acting under the orders of his superior, shall be the same in case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him as if such servant or employe were a passenger,"—constituted the law fixing the liability of the defendant in the case, and that the declarations of law as requested were in conflict with that statute. This statute is, therefore, brought before this court for the first time for judicial interpretation.

The counsel for the defendant contends that under the common law the defendant corporation had performed its whole duty to the plaintiff as its employe when it had used ordinary and reasonable care in providing (1) safe machinery, (2) furnishing a safe place to work, and (3) competent fellow servants to prosecute the common employment; and that the statute in question does not increase or change the defendant's liability at common law; that it does not change the common law in relation to fellow servants; that it does not establish the superior servant doctrine and enlarge the common-law liability of the defendant in any respect, and was not so intended by the legislature.

The learned counsel of defendant, in his able and exhaustive brief, has cited numerous authorities in support of the common-law rule applicable in such cases; but these authorities do not attempt to discuss the effect of such legislation as is here involved upon the common-law rule. It cannot be disputed that the common-law rule has been modified, if not changed, both in England and in many of the American states, by recent legislation on the subject. So we think we may omit a discussion of the common-law rule, and look to the course and effect of modern legislation on this subject.

Beach, in his work on Contributory Negligence, (section 376), says: "It became evident early in the course of the development of the law upon this point that, in order to preserve to the employe any vestige of the right of action which the common law gave him against his employer, in a proper case, for personal injuries attributable to the negligence of another, and received in the course of the common employment, the tendency to extend the rule which had its inception in England in the case of *Priestly* v. *Fowler*, 3 Mees. & W. 1, and in the United States in the early cases of *Murray* v. *Railroad Co.*, 1 McMast. R. R. Law 385, and *Farwell* v. *Railroad Co.*, 4 Metc. (Mass.) 49, and under the operation of which the defense of a common employment had come to be urged to the practical destruction of all such rights of action, would have to be checked, and could only be checked, by legislation. Accordingly, on the 7th of September, 1880, parliament changed the law of England by passing the employers' liability act (43 & 44 Vict. c. 42), which, pending its final enactment, was popularly known as the 'Gladstone Bill,' and which, at the time, attracted much attention, both here and in England.' Section 377 of the same work contains a resume of this act of parliament, and subdivisions 2 and 3, as the author has subdivided the act, are instances in which the master is liable for injuries received by a servant from the negligence of a superior. These subdivisions are as follows: "(2) By reason of the negligence of any person instrusted with superintendence. (3) By reason of the negligence of any superior workman whose orders the injured person was bound to obey." The same author, in section 379, says: "Comparatively recent legislation in several of the states of the Union has in some degree modified for us in this country the rule of nonliability which the courts of every jurisdiction, as we have seen, have uniformly declared. In California, Dakota, Georgia, Kansas, Iowa, Mississippi, Montana, Rhode Island, Wisconsin, Wyoming, Alabama, Massachusetts, and Missouri, statutes, the substance of which is set out in the notes, have been passed, under the wholesome operation of which the old rule of non-

liability is practically abrogated. Except in California and Dakota, it may be said that in each of the states just mentioned the old rule is entirely abandoned, and an adequate remedy provided by the statutes for the proper protection of railway employes; while in California and Dakota the statutes define the limit of liability, and *quoad hoc* recognize and assert the propriety of legislation upon this subject.'' (The statutes of these several states are given in the notes to this section.) So it will be seen that in the opinion of this author the common-law rule of nonliability in such cases is practically abrogated by such legislation, and entirely abandoned in the states named, including Montana, except in the case of California and Dakota.

But we are not without further light and assistance in the interpretation of the statute under discussion. It has been the subject of direct construction by two of the most respectable courts of the country.

In the United States circuit court of the Northern district of Iowa, in the case of *Ragsdale* v. *Railroad Co.*, 42 Fed. 383, a case involving directly the construction of this statute, and its effect upon the common-law rule insisted upon in this case, Judge Shiras, delivering the opinion of the court, said: ''On part of plaintiff it is further claimed that the statute of Montana, in force when the accident happened, modifies the common-law rule in regard to the liability for the acts of fellow servants,'' and, after quoting the statute, he continues : '' This statute does not go to the length of abrogating the general rule that the master is not liable to an employe for the consequences of the negligence of a coemploye, but it does enact, in effect, that a superior is not a coemploye with an inferior, and that one may be a superior, as compared with another, even though the former does not control the latter. The enactment is based upon the known fact that, in carrying on the business of railroading, there are recognized grades among the numerous classes of employes, and, while they are all working for a common master, and for an ultimate common result, they are practically not all coservants. The pres-

ent plaintiff was a fireman, and his duties were limited generally to attending to the furnace and other matters upon the engine.    He did not belong to that class of employes that were charged with the duty of controlling the movement of the trains.    The answer expressly avers that the collision was caused by the negligence of the officials in command of the movement of train No. 1, and there is no fact averred which tends to show that as to them the plaintiff occupied any other position than that of an inferior, within the meaning of the statute of Montana.    The act of negligence set up in the answer is that train No. 1 was moved past the telegraph station in violation of the rule of the company, and it is averred that this was done by those in command of such train.    It will certainly not be claimed that a fireman upon the engine is an employe, charged with the control of the moving of the trains, —a duty primarily imposed upon the conductor; and it is certainly the fair inference that in the moving and running of trains the conductor is the superior of a fireman.    In other words, the conductor, or party charged with the control of the train, is a superior, as compared with a fireman, within the meaning of the Montana statute.    Under this section the corporation is made liable to any one of its employes who, without negligence on his part, is injured by the default or wrongful act of a superior, even though the latter has no control over the former.    Whether, therefore, the liability of the defendant corporation is to be determined under the common-law rule or under the statute of Montana, the facts set forth in the answer do not show that the act of negligence causing the collision and consequent injury to plaintiff was the act of a coemploye, but, on the contrary, it would appear therefrom that such act of negligence was the act of the representative of the corporation, who was also the superior of the plaintiff. This being the conclusion, it follows that the answer is insufficient, and the demurrer thereto is sustained.''

After sustaining the demurrer in the case, as shown above, the defendant amended its answer, and alleged that plaintiff's injuries were the result of the negligence of the engineer of

the train on which plaintiff was employed, whereas, in its original answer, the defendant had alleged that the injuries of plaintiff resulted from the negligence of the conductor of another train.   The court sustained a demurrer to the amended answer, and in doing so Judge Shiras said :   " The amended answer shows that the engineer was primarily charged with the duty of halting the train at Evaro station, and that he negligently failed in the performance of this duty.   It seems to me that the same rule must be applied to the one case as to the other and that the reasons which sustain the liability of the company in case of the negligence of the conductor apply with equal force to the negligence of the engineer when such negligence occurred in a matter touching the actual movements of the train, and which was at the time wholly under the control of the engineer.   In such matters the engineer represents the company, and for his negligence the company must respond. The demurrer is sustained.''

In the circuit court of appeals, Eighth circuit, in *Northern Pac. R. R. Co.* v. *Mase,* 11 C. C. A. 63, 63 Fed. 114, decided July 16, 1894,—a case involving directly the interpretation of the Montana statute under discussion, and its effect upon the common-law rule,—Judge Sanborn, speaking for the court, said:  ''The result is that the right of recovery in this action, if it exists at all, must rest in the statute of Montana,'' and, after citing the statute, proceeded as follows :  '' This section is found in a chapter of the general laws of Montana relating to railroad corporations, and it seems to affect the liability of such corporations only.   It goes without saying that the purpose of this statute was to extend the liability of railroad companies to their servants for the negligence of servants of a higher grade.   It is equally clear that the pronoun 'him' in the clause, 'or to an employe not appointed or controlled by him,' refers to the employe's 'superior,' and that the intention of the legislature was to extend the liabilities of the companies for the negligence of superior servants for the benefit of two classes of employes, viz : those injured by the default or wrongful act of a superior employe under whose orders they

were acting, and those injured by the default or wrongful act of a superior servant who did not appoint, and who had no control over them. The statute is inartificially drawn, but its meaning is not doubtful, and its obscurity at once disappears if the clause, ' or to an employe not appointed or controlled by him,' is transposed to its grammatical and logical position in the sentence, and placed before the verb. Then the statute would read : ' That in every case the liability of the corporation to a servant or employe acting under the orders of his superior, or to an employe not appointed or controlled by him, shall be the same in case of injury sustained by default or wrongful act of his superior as if such servant or employe were a passenger.' Now, the conductor whose negligence in leaving the switch open caused the death of a fireman on another train, in this case, was the superior of that fireman in the employment of the same master. His rank or grade in the service was higher. The fireman, it is true, was not acting under his orders, and was not one of the first class protected by the statute, but he was an employe ' not appointed or controlled ' by this superior, whose default caused his injury; and he was clearly one of the second class, to whom a right of action for such a default was given by this statute. The effect of the statute is to give a cause of action against the railroad company to every servant who is himself without fault, for the default or wrongful act of any superior servant, whether or not the latter appointed or exercised any control over the former before or at the time of the infliction of the injury. This was the construction given to this statute by Judge Shiras, of the Northern district of Iowa, upon the circuit, and we have no doubt of its correctness. (*Ragsdale* v. *Northern Pac. R. R. Co.*, 42 Fed. 383, 386.) That the railroad company would have been liable for any injury resulting to a passenger on the train that ran through the open switch from the negligence of the conductor who left it open, admits of no discussion. It follows that under this statute and the stipulation in this case the railroad company was liable to the defendant in error to the same extent for the injury to the deceased fireman that it would have

been to a passenger, and on this ground the judgment must be affirmed. It is so ordered.''

We think from the interpretation given to the statute in question by the above authorities that it cannot be doubted that the common-law rule contended for by defendant was modified and changed thereby, and that such was the intention of that legislation. And it is no less plain that this statute establishes the principle that there is a difference in the grade of the employes engaged in a common employment, and gives a right of action to a servant injured through the negligence of a superior employe or servant against a master, when such injured servant is without fault or negligence on his part. In view of the extent to which the common-law rule has been carried, the enactment of such legislation is not surprising, nor are we prepared to reprobate the wisdom of the policy of establishing a legislative rule that relaxes the rigor of the common-law in such cases. Having arrived at this conclusion, we see no error in the action of the court in this respect.

The defendant contends that the evidence shows that plaintiff was injured as a result of his own carelessness and negligence. This was a question of fact for the determination of the jury. It was submitted to them by the court under instructions remarkably favorable to the defendant. We think the evidence supports the finding that his injuries did not result from his own negligence. We think the evidence clearly establishes the allegation that the plaintiff was injured through the negligence of the conductor and engineer of the train on which plaintiff was employed. As they were the superior employes of the plaintiff, and the plaintiff having been found to have been without fault or negligence, the negligence of such superior employes was the negligence of the defendant.

We have considered the many assignments of error in the record, relating principally to the admission of certain evidence. We think these, and all other assignments not treated above, immaterial, and without merit. The judgment and order appealed from are affirmed.

*Affirmed.*

DE WITT and HUNT, JJ., concur.