CRISWELL, RESPONDENT, *v.* MONTANA CENTRAL RAILWAY COMPANY, APPELLANT.

[Submitted April 1, 1896. Decided April 13, 1896.]

CONSTITUTIONAL LAW—*Railroads—Liability to employe.*—Section 697, Fifth Division of the Compiled Statutes, declaring the liability of the corporation to an employe injured through the negligence of his superior to be the same as if the employe were a passenger, being originally part of an act for the incorporation of railroad companies in the territory, and having application only to corporations created under such act, imposes upon domestic railroad companies a burden not imposed upon foreign railroad companies operating within the state and was therefore annulled by the adoption of the state constitution, in which (§ 11. Article XV) foreign corporations are prohibited from enjoying within the state any greater privileges than enjoyed by like corporations created under the laws of the state.

SAME—*Self executing provisions.*—Section 11, Article XV of the constitution, declaring in effect that domestic corporations shall not be discriminated against in the enjoyment or possession of rights and privileges that may be accorded to foreign corporations of like character, is self executing as a prohibition, but not as an affirmative imposition upon, or securement to, foreign companies of the rights or privileges only accorded by state laws to domestic companies.

ON REHEARING. For former report see 17 Mont. 189. Reversed.

*W. W. Dixon, A. J. Shores, Cullen & Toole* and *C. W. Bunn,* for Appellant.

*George F. Shelton* and *Largent & Huntoon,* for Respondent.

HUNT, J.—Having decided by the opinion of the chief justice that section 697 of the Compiled Statutes of 1887

(Fifth Division) modified the common law rule in regard to the liability of railroad companies to their servants for the negligence of servants of a higher grade (17 Mont. 189), the court granted a rehearing upon this further question, which was not urged upon the original argument, but which became vital in consequence of the views of the court, namely : What effect did section 11 of Article XV of the constitution of the state have upon said section 697 of the Compiled Statutes ?

Section 697 being quoted in full in the .opinion, it is unnecessary to repeat it. The contention of the appellant is that it was intended by the legislature that said section was to apply, and was applied, only to corporations formed under the act approved May 7, 1873, and that the rule of liability established by section 697 has never been extended by subsequent legislation; .hence, that when the state was admitted and a constitution was adopted, in 1889, section 697 was applicable only to domestic railroad corporations; and that, therefore, the section imposed upon domestic railway companies a burden that was not imposed by any law of Montana upon railroad companies doing business within this state, which were organized under the laws of any other state.

The material part of section 11 of Article XV of the constitution of the state is as follows : "And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

Examining section 697 of the statutes, we first find it as section 20 of "An act to provide for the formation of railroad corporations in the territory of Montana," passed over the governor's veto, on May 7, 1873 (Laws of Montana, 1873, Extra Session, page 93, *et seq.*) That act provided, as its title indicates, for the incorporation of railroad companies in the territory. The number of persons who might constitute the body corporate, the certificate required, the powers to carry out the objects of the incorporation, the regulation of the pay-

ment of the capital stock, the organization of the board of di-rectors, the right of way over public lands, and powers and proceedings for purposes of condemnation, the time when operations must be commenced, the powers of the company to borrow money, the regulations of fares and freight rates, the annual reports to the territorial auditor; and other matters ap-propriate to the exercise of corporate powers, and to the regu-lation of corporations formed for railroad construction and operation, were covered by the 25 sections of the law. Throughout these sections references are to corporate associa-tions under " this act " (§§ 2, 12-14); or named in " said cer-tificate of incorporation " (§ 7); or " to any railroad corpora-tion incorporated under this act " (§ 8); or to " such road " (§ 9); " such corporation " (§§ 11, 15-18).

Section 19 provides that " nothing in this act shall be con-strued to make the territory    *    *    *    responsible for any debts or obligations of any character which may be contracted by such corporations. "    Then comes section 20 (§ 697 of the Compiled Statutes), as follows :

" Section 20.    That in every case the liability of the cor-poration to a servant or employe acting under the orders of his superior shall be the same in case of injury sustained by default or wrongful act of his superior, or to an employe not appointed or controlled by him, as if such servant or employe were a passenger. "

Section 21 pertains to the amount of capital stock of " said corporation, " and to the expenses of the construction of " said road. "

Section 22 expressly refers to " said corporations formed hereunder. "

Sections 23 and 24, relating to freight rates and accounts, do not appear so clearly by particular words to be expressly limited to domestic corporations, although it would seem that when considered with the whole context, which pertains to the formation of railroads within the territory, and with relation to the fact that in 1873 there were no railroads within the territory of Montana to be regulated, these sections, too, were

limited in their application to railroads formed under the act of which these two were part.

But that section 20 refers to corporations created under the act in which that section is found is clear from the particularization of corporations to be made liable in every case. "The corporation" is equivalent to the words "any corporation formed under the provisions of the act controlling the incorporation of railroad companies within Montana" This construction is literal; it is also in harmony with the sense of the words and clauses in the different parts of the statute, and with the subject-matter and general purpose thereof. The courts cannot extend the application of the particular provision referred to beyond the apparent intent of the legislature.

There were several statutes enacted in 1887 permitting certain foreign railroad companies to extend their railway lines into Montana (Compiled Statutes, Division 5, Section 702, *et seq.*); but the respondent does not argue, nor do we think it could be maintained, that by such provisions there was expressed or implied any purpose other than to confer upon such foreign companies such corporate rights, powers, immunities, and franchises as are necessary to the complete exercise of the privileges of building, maintaining, and operating their extended lines within the territory.

Holding, therefore, that section 697 applied to domestic railroad corporations only, what effect did the adoption of the constitution of the state have upon that section? No comment is necessary to demonstrate that a rule of liability by which a domestic railroad company may suffer heavily for negligence of an employe, where another, but foreign, railroad corporation cannot be made liable at all for like negligence, is the imposition of a burden upon the former, and not upon the latter.

Whether or not the legislature of the state may establish certain rules of liability between *foreign* railway companies, which it may permit to operate lines within the state, and their employes is immaterial to the question under consideration. We are not discussing the extent of power of the legislature over *foreign* corporations. In this decision it is not

necessary to go farther than to ascertain whether the constitution of the state by section 11, Article XV, *supra,* annulled section 697, which was applicable to domestic corporations alone, or whether it extended said section so as to make it applicable to all railroad companies, foreign and domestic. The constitutional section under consideration established a principle that domestic corporations shall not be discriminated against in the enjoyment or possession of rights and privileges that may be accorded to foreign corporations of a like character. Just what rights, what privileges, what burdens or liabilities, in detail, should be granted or imposed, were not defined by the constitutional convention. Those are matters within the sphere of legislation subject always to the constitutional limitation upon such legislation. Take the instance before us. The whole subject of what the rule of liability of a corporation for personal injury to its employes may be, where the corporation is negligent, was left to the legislature to control by appropriate statutes, the constitution simply ordaining that all home companies shall be protected against laws discriminating against them, and in favor of foreign companies, and always, as provided by section 17, Article XV, that contracts entered into between corporations and their employes, where, as a condition of employment, the corporation shall be released or discharged from liability on account of personal injury received by the servant, while in the service of the corporation, by reason of the negligence of such corporation, or the agents or employes thereof, shall be null and void.

The learned counsel for the respondent argues that section 11 is self-executing. We agree with him in that contention, but not to the extent he would apply the doctrine of self-execution. The prohibition lays down a principle of protection to domestic corporations that at once, upon the adoption of the constitution and the admission of the state, became a sufficient rule by means of which the rights and privileges possessed by domestic companies were and are protected against legislative or other discriminations extending

the possession or enjoyment of rights or privileges to foreign corporations greater than those already possessed, or those that may be attempted to be granted by any future action. To this extent the provision was completely self-executing, and no legislation was required to give the prohibition full force and operation. (Cooley on Constitutional Limitations, page 99.)

But we cannot assent to respondent's position that the object of the constitutional provision was to establish uniformity with respect to the two classes of corporations by making laws that were applicable only to the domestic class at the time of the adoption of the constitution extend to the foreign class, in order to make an equal liability for all, or that the clause does establish uniformity by so operating upon such territorial laws. As said, the inhibition at once, by itself, prevented the discriminations; but there is no affirmative language, and no intent by the words used, to extend to foreign companies the burdens, rights, and privileges imposed or granted by law to domestic corporations. In this respect legislation must be had to affect such corporations by force of law.

By section 1 of the schedule of the constitution, all laws enacted by the legislative assembly of the territory, and in force at the time the state was admitted into the Union, and not inconsistent with the constitution, should be and remain in full force as the laws of the state until altered or repealed, or until expired by their own limitation. This provision is likewise self-executing. By it, rights were preserved. It operated of itself to keep in force a system of laws for the government of the state, unless such laws were inconsistent with the constitution. But, as to any such repugnant statutes, it operated as an effective repeal, for, when the constitution became the fundamental law, acts in conflict with it yielded; and when the question of a conflict is presented to the court, and the conflict clearly appears, the statute must be decided to be inoperative and void. (Cooley on Constitutional Limitations, page 58.) As the supreme court of Illinois has very

recently said, by way of repetition of one of its earlier decisions: "The understanding with all persons is that a law passed, either before or after the adoption of the constitution, which is repugnant to its provisions, must be held to be of no valid force, and precisely as if it had been repealed before the performance of the act." (*Washington Home of Chicago* v. *City of Chicago*, 157 Ill. 414, 41 N. E. 893.)

We find high authority for our opinion in the case of *Norton* v. *Commissioners*, 129 U. S. 479, 9 Sup. Ct. 322, where the supreme court refused to uphold the doctrine that, when a state government commenced under a new constitution, an act of the legislature was amended by a constitutional provision so as to substitute a vote of three-fourths for that of a majority of votes cast at an election for or against the issuance of bonds. The court refer to the argument that the constitution extended the law to the enactment of a statute, and reject the view that a law inconsistent with the constitution when adopted is reenacted, "so to speak," by a section like No. 1 of the schedule to the constitution of Montana.

"The power of ordinary legislation," says Chief Justice Fuller, "is vested under all our constitutions, in the legislatures, and the constitutional convention of Tennessee did not assume to exercise such power. The amendment of a law is usually accomplished according to a prescribed course, and there is nothing here to justify the conclusion that section 29 of Article II was designed to operate by way of amendment to prior laws nor can it so operate, nor the act of 1870 be held to have been kept in force, for the reasons already indicated." (*Norton* v. *Commissioners*, 129 U. S. 479, 9 Sup. Ct. 322.)

From these views it follows that the prohibition clause against any discrimination against a domestic corporation is self-executing as a prohibition, but not as an affirmative imposition upon or securement to foreign companies of the rights or privileges expressly only accorded by the state laws to domestic companies. It also follows that by section 697, originally a territorial statute, a greater burden was put upon

appellant than was placed upon a foreign company of a similar character. The statute, therefore, being inconsistent with the constitution was annulled by the adoption of the constitution.

The judgment of this court heretofore rendered, affirming the judgment of the district court is set aside and reversed, and the judgment of the district court and the order overruling a motion for a new trial are reversed, and the cause is remanded, with directions to grant a new trial.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.