FIRST NAT. BANK OF BUTTE v. WEIDENBECK et al.

(Circuit Court, D. Minnesota. May 27, 1898.)

1. CORPORATIONS—LIABILITY OF TRUSTEES—STATUTES.
   Comp. St. Mont. c. 25, § 460, making trustees of domestic corporations liable for corporate debts, on the failure of the corporation to make and file an annual report, was not repealed by Const. Mont. art. 15, § 11, which provides that "no company or corporation formed under the laws of any other country, state or territory, shall have or be allowed to exercise or enjoy within this state, any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

2. ALTERATION OF INSTRUMENTS—GUARANTY.
   Where, without the knowledge of the maker of a note, the payee secures a third party to guaranty it by adding his signature to it, such guaranty is an alteration which will release the maker.

3. SAME.
   Where a corporate note, which had been altered by adding the signature of another without the knowledge of the maker, is again altered by removing such signature, subsequent to the fixing of the liability of the trustees of the company for its debts by a failure to publish its annual report, such subsequent alteration relieves the trustees from liability.

Young & Lightner and Hinkle & Shelton, for plaintiff.
Cobb & Wheelwright, for defendants.

LOCHREN, District Judge. Defendants demur generally to the petition or complaint of plaintiff, which seeks to hold the defendants, trustees of the Twin City Butte Mining Company, a Montana corporation, during the year 1893, and ever since, upon an indebtedness of said corporation to the plaintiff, alleged to have arisen upon a loan of $4,000 made by plaintiff to said corporation on or about February 15, 1893, and for which said corporation gave its note, signed also by another, to plaintiff, on January 27, 1894, bearing interest at the rate of 1 per cent. per month, on which there is alleged to be owing, August 18, 1894, the sum of $3,221.98, still unpaid. The personal liability of the defendants for said indebtedness is claimed under a section of the same statute of Montana under which said Twin City Butte Mining Company was incorporated, which provides that every corporation organized under that statute shall annually, within 20 days from the 1st day of September, make a report which shall state the amount of the capital of such corporation, and the proportion thereof actually paid in, and the amount of existing debts; and which report shall be signed by the president and a majority of the trustees of such corporation, and be verified by the oath of its president and secretary, and be filed in the office of the clerk of the county where the business of said corporation is carried on; and that, if any company shall fail to make or file such report as above stated, all the trustees of the company shall be jointly and severally liable for the debts of the company then existing, and for all that shall be contracted before such report shall be made. Comp. St. c. 25, § 460. The complaint alleges that said Twin City Butte Mining Company did not make or file such report within 20 days from the 1st day of September, 1894, nor at any time thereafter, prior to February 3, 1895.

In the case of Fitzgerald v. Weidenbeck, 76 Fed. 695, it was, upon like allegations, held that these defendants are jointly and severally liable for the debts of the corporation existing in September, 1894, for reasons then stated, and which need not here be repeated. But in this case it is urged, upon the authority of Criswell v. Railway Co., 18 Mont. 167, 44 Pac. 525, that as the statute of Montana above referred to, making trustees personally liable for corporate debts on the failure of the corporation to make and file the required report (Comp. St. div. 5, c. 25, § 460), was a statute of the territory of Montana, applicable only to domestic corporations, it was repealed or annulled by section 11 of article 15 of the constitution of the state of Montana, which ordains:

"And no company or corporation formed under the laws of any other country, state or territory, shall have or be allowed to exercise or enjoy within this state, any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

In the case just cited it was held that section 20 of "An act to provide for the formation of railroad corporations in the territory

of Montana," passed May 7, 1873 (Laws 1873, Ex. Sess. p. 93), which extended the liability of railroad corporations formed under that act, in cases of personal injury to servants and employés, beyond the liability at common law, was annulled by the section of the constitution above quoted, for the reason that such increased liability was not also in terms extended to or made to include railroad companies of other states or countries doing business in Montana.

The reasoning seems faulty. The provision of the constitution does not purport to control or limit the power of the legislature to grant rights and privileges, or prescribe regulations or liabilities, as to domestic corporations. No regulation respecting domestic corporations can contravene that section of the constitution which relates only to foreign corporations, making the rights and privileges of domestic corporations the maximum measure of those which foreign corporations can have or be permitted to exercise. It follows that any enactment or rule of law, under which a foreign corporation could claim greater rights or privileges than those accorded to domestic corporations, must be held to be contrary to the constitution and nugatory. The decision in Criswell v. Railway Co., as to the validity of the Montana statute under consideration in that case, is not sufficiently persuasive to warrant its application by analogy to other statutes of that state.

The promissory note made and delivered by the mining company to plaintiff is set forth in the complaint, as follows:

"$4,000.          St. Paul, Minn., Jan. 27, 1894.

"Thirty days after date, without grace, for value received, we promise to pay to the order of the First National Bank of Butte, Montana, four thousand dollars, payable at the First National Bank, Butte City, Montana, with one per cent. interest per month from date until paid.

"Twin City Butte Mining Co.,<br>
"G. J. Heinrichs, President.<br>
"C. L. Caldwell, Secy. & Treas.<br>
"Theo. Schweitzer."

This is the joint promissory note of the Twin City Butte Mining Company and Theodore Schweitzer, and its acceptance by plaintiff satisfied and merged in it the previous debt of the mining company to the plaintiff.

The complaint further alleges that, after the execution and delivery of this note, the plaintiff, at its own instance, and without the knowledge of the Twin City Butte Mining Company, procured one George H. Tong to guaranty said note by writing his name at the bottom of said note. Whatever might be the purpose and understanding between the plaintiff and Tong as to the effect of the signature of said note by Tong, there is no allegation that he so signed it by any mistake or inadvertence, and the legal effect of his signature at the bottom of said note must be determined by the terms of the note itself, when so signed. Tong became apparently a joint maker of the note with the Twin City Butte Mining Company and Theodore Schweitzer, and this constituted such a material alteration of the note by the plaintiff, who was the holder, or by plaintiff's direct procuration, as discharged the makers. 2 Daniel, Neg. Inst. §§ 1373, 1387; 3 Rand. Com. Paper, §§ 1742, 1744, and cases cited. As to the

87 F.—18

contract of the original makers of the note, Tong was merely an intermeddler, changing by his signature the note which was the written evidence of the contract of the makers, and doing this at the instance of the payee and holder of the note. The sanctity of written contracts will not admit of such material changes, willfully made by a party to the contract, and the rule should be held strictly in the case of commercial paper.

The case of Mersman v. Werges, 112 U. S. 139, 5 Sup. Ct. 65, is not, when carefully examined, opposed to this rule, although it contains some dicta so broadly stated as to appear to trench upon it. In that case the maker of the note was a partner of one Krueger, and, to raise money for the partnership business, made the note payable in terms to Krueger, and with his wife executed a mortgage to secure the note, both being delivered to Krueger to negotiate, who, before negotiating the same, without authority, signed the name of the maker's wife to the note, and indorsed the note himself, and negotiated it to plaintiff for moneys for the use of the partnership firm. Krueger was never the owner of the note, but intrusted with it by the maker to negotiate. The alteration was therefore made by the maker's agent, and before the note was actually negotiated and delivered; and the plaintiff, to whom Krueger negotiated it, had no participation in or knowledge of the change, and the suit was in equity, to foreclose the mortgage. The decision was manifestly correct, upon the facts of the case; but it is unsafe to hold that some unguarded dicta contained in the opinion have overturned the wholesome rule in respect to the willful alteration of written instruments by parties claiming under them. See Smith v. U. S., 2 Wall. 219, 232.

The liability of defendants as trustees, under the statute referred to, became fixed upon the failure of the Twin City Butte Mining Company to make and file the required report within 20 days from the 1st day of September, 1894. If at that time the alteration of the note by the signature of George H. Tong had discharged the makers, the defendants incurred no liability to plaintiff. But, if the defendants did become liable to pay that note to plaintiff, their liability, on whatever theory it might rest, was secondary to that of the principal debtor, the Twin City Butte Mining Company, and, if compelled to pay the debt, they would be entitled to be subrogated to all rights and securities in respect to the debt held by the plaintiff; and at that time the note had upon its face the signature of George H. Tong, either as maker or guarantor. As one or the other, he was liable to plaintiff for the amount of the note; and being a voluntary intermeddler, without the request or knowledge of the original makers, he would not, by merely paying the note, have any claim for reimbursement against the original makers. The complaint, however, alleges that on or about January 15, 1895, a date after the liability of the present defendants (if any) was fixed, and when defendants, if to be called on to pay the note, were interested in the preservation of its integrity as it then was, and of all securities for its payment which then existed, the plaintiff again altered and changed the note by removing from it the signature of said George

H. Tong.   This, again, was spoliation (Hall's Adm'x v. McHenry, 19 Iowa, 522), which should prevent any recovery against these defendants.

The demurrer is sustained, with leave to plaintiff, if so advised, to amend on or before the rule day in July, 1898.