MADDOX, (GADDIS, INTERVENOR), RESPONDENTS, *v.*
TEAGUE ET AL., APPELLANTS.

[Submitted June 17, 1896. Decided October 19, 1896.]

LAW OF THE CASE—*Decision of the United States Supreme Court—When not controlling.*—Where upon the first trial of a case in the district court the defendants assumed the burden of proof and introduced testimony and the case was removed from the jury and judgment rendered for plaintiff, which was affirmed by the supreme court of the territory, a decision of the supreme court of the United States reversing the judgment for error in removing the case from the jury, ceases to be the law of the case so as to control the courts of this state, where upon the second trial the testimony of both plaintiff and defendants is submitted to the jury and a new state of material facts disclosed. (*Creighton* v. *Hershfield,* 2 Mont. 169; *Daniels* v. *Andes Insurance Co.* 2 Mont. 500; *Palmer* v. *Murray,* 8 Mont. 174; *Kelly* v. *Cable Company,* 8 Mont. 440; *Davenport* v. *Kleinschmidt,* 8 Mont. 467, cited.)

SAME—*Same—Chattel mortgage sale.*—The ruling of the territorial supreme court upon the former appeal of this case, that by the delivery of the chattel mortgage to the sheriff for the purpose of selling the property, he had authority to sell only for cash, not being disturbed by the decision of the United States supreme court, remains the law of the case upon this appeal.

CHATTEL MORTGAGE—*Auction sale—Sheriff—Liability for credit sale*—Where a sheriff in foreclosing a chattel mortgage upon a band of horses accepts a deposit from a bidder and then receives his bids upon a large portion of the horses, until his purchases greatly exceed the amount of the deposit, without further payment being made, and thereupon permits the mortgagor to redeem the unsold horses upon the payment of a sum of money which, together with the amounts already bid, was sufficient to satisfy the entire mortgage debt, and pays to the mortgagee the amount actually collected less the costs of the sale, he will be regarded as having treated the transaction as a completed sale so as to render him liable to the mortgagee for the amount for which such unpaid bids exceed the deposit.

SAME—*Same—Ratification of unauthorized sale.*—Where it was contended by the sheriff that the mortgagee's agent authorized him to receive such bids in excess of the deposit under an arrangement whereby the deposit and horses were to be forfeited to the mortgagee in the event of the bidder failing to make good his bids within a specified time, which arrangement was denied by the mortgagee's agent, it was proper to submit to the jury the intention and understanding with which the mortgagee accepted from the sheriff a payment embracing such deposit, on an issue as to whether by so accepting it he ratified such alleged arrangement.

APPEAL—*Departure in pleading—Motion to strike out—Review on appeal.*—A motion to strike out a portion of a replication as being a departure from the complaint will be held to have been properly overruled where the motion failed to point out in what the alleged departure consisted.

SAME—*Sufficiency of objections to testimony.*—Objections to testimony on the trial which fail to point out the grounds upon which the objections are made will not be considered on appeal. (*State* v. *Black,* 15 Mont. 143, cited.)

*Appeal from Sixth Judicial District, Meagher County.*

ACTION on sheriff's bond. The cause was tried before HENRY, J. Plaintiff had judgment below. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff Maddox, and intervenor Gaddis, obtained a judgment in this case in the year 1888. That judgment was affirmed by the territorial supreme court (9 Mont. 126.) On writ of error from the supreme court of the United States the judgment of the territorial supreme court was reversed. On mandate from the United States supreme court to us a new trial was ordered in the district court of the state. For the history of the case up to the time of the second trial see 9 Mont. 126 and 150 U. S. 128. On the second trial in the district court verdict and judgment were also for plaintiff and intervenor. Defendant's motion for a new trial was denied. The appeal now is from the judgment and that order.

On the second trial the defendants, as in the first, had the burden of proof. On this trial the testimony of the defendants was not stricken out as it was in the first, but it went to the jury along with the testimony of the plaintiff and the intervenor ; and, under instructions of the court, the facts thus testified to were passed upon by the jury. When the second trial took place, defendant Rader was dead and Teague, his administrator, was substituted, and now appears as defendant and appellant. The other defendants are sureties on Rader's official bond as sheriff. There is a complaint by the plaintiff and also by the intervenor ; and, as remarked in appellants' brief, they are substantially alike. Appellants also say that the intervenor's case must stand or fall with the judgment entered in favor of plaintiff. We will therefore consider the complaint of plaintiff alone.

That pleading alleges the fact of Rader being sheriff of Meagher county, and his giving his official bond, with the defendants other than him as sureties; that on August 9th, 1887, plaintiff gave Rader a chattel mortgage, executed by P. D. Kinyon to secure the plaintiff in the sum of $7,313, and interest, and Gaddis in the sum of $3,000, with interest; that plaintiff directed said Rader to seize the property described in the mortgage and sell the same, etc. ; that Rader, between August 9th and 30th, 1887, seized and advertised the property, to-wit, horses, and between August 30th and September

5th, sold a large quantity of the horses for $10,735, and on September 5th released the balance of the property unsold to said Kinyon upon the payment by Kinyon to him of a sum of money, which with the $10,735 aforesaid was sufficient to satisfy the mortgage with interest and costs ; that on September 5th, 1887, there was due to plaintiff $7,043, with interest, making $8,187 ; that on September 15th, Rader paid to plaintiff $2,872.31, leaving a balance of $5,314.69 ; that plaintiff demanded payment of this sum and defendant Rader, contrary to the obligations of his bond, refused said payment. Judgment was demanded for said sum.

For answer the defendants denied that Rader had received the sum of $10,735, or any greater sum than $3,390.65. Further answering they allege that 142 horses, mares and colts were bid off and knocked down to one A. B. Kier for $8,096.50, and that in pursuance to instructions from the mortgagees and according to an agreement then made between the mortgagees and Kier, whereby Kier was to pay Rader and did pay him $1,752.15, and was to have five days in which to pay the balance, Rader to retain the horses, mares and colts until full payment was made, and in event of Kier's failure to pay, the said sum of $1,752.15 was to become forfeited to the use of the mortgagees and the horses to be retained by Rader on account of the mortgagees, the said Rader did retain said $1,752.15 and did pay the same to the mortgagees, said sum being part of that which he paid over to the mortgagees ; and that Rader retained in custody the 142 horses subject to the order of the mortgagees ; that afterwards Rader notified the mortgagees of Kier's failure to pay the balance and that the horses were held subject to their order, and that the mortgagees failing to direct the disposition of the horses, Rader tendered them to the mortgagees and that they refused to receive them ; and that Rader holds the same subject to the orders of the mortgagees ; that on September 5th, Kinyon, the mortgagor, tendered and paid to Rader $2,459.20, the balance due on the mortgage and demanded the return of the property unsold ; that Rader returned to Kinyon said unsold property

and paid to the mortgagees the said sum of $2,459.20.   These are the material allegations of the answer.

Plaintiff in replication admitted that at the sale 142 head of horses were bid off and knocked down to said Kier for $8,096.50 but denied that this was done pursuant to instructions from the mortgagees or according to any agreement as set forth in the answer, or that any such agreement was made between them and Kier ; or that they ever agreed that Kier was to have any time in which to pay for the horses, or that in event of his failure to pay they were to be retained by Rader on account of the mortgagees ; denied that Rader retained the horses subject to the order of the mortgagees, but held them under his own control for the purpose of enabling Kier to pay the balance of $8,096.50, and that this Rader did pursuant to an agreement between him and Kier at his own risk for a period of thirty days ; denied that Rader notified the mortgagees that the horses were held subject to their orders or that he tendered the horses, but on the contrary alleged that Rader retained the horses to enable Kier to pay the balance and assisted Kier in efforts to raise the money for that purpose ; that thereafter the sheriff sold many of the horses to other persons, and that thereafter he delivered a portion of the horses to his co-defendants, who sold some of them and divided between themselves some $1,500.   The replication admits that Rader paid to plaintiff the sum of $3,192.93, and to Gaddis $1,591.57, but avers that when that money was received plaintiff was not informed by Rader that the deposit of $1,752.15 made by Kier was embraced in said sum of $3,192.93, and that when plaintiff received said sum he had no knowledge that the payment embraced the $1,752.15 alleged to have been forfeited, as set up in the answer ; and that the payment of $3,192.93 by Rader to him was not intended or understood as a transfer of the money alleged to have been deposited as a forfeiture, but was a payment on account upon the sum that Rader was then owing plaintiff.

Upon these pleadings the case was tried and evidence introduced on both sides.   Verdict and judgment were for the plaintiff and the intervenor.

*H. G. McIntire, Max Waterman* and *Cullen & Toole*, for
Appellants.

I.   Plaintiffs amended replication was a departure in plead-
ing.   The allegations contained in it are an attempt to set up
a conversion of these horses by the defendants at a date subse-
quent to the time, it is alleged in the complaint, they were
sold at public auction.   The cause of action alleged in the
complaint is one of completed sale made by the sheriff, and his
failure to account for a portion of the proceeds which he real-
ized from such sale.   The cause of action thus alleged is
inconsistent with and repugnant to the idea of a conversion of
this same property at a time subsequent to the sale, as alleged
in the replication.   If the allegations in the complaint, that
there was a sale of this property, are true, then the allegation
in the replication with reference to a conversion of it, after
such sale by these defendants, must of necessity be untrue.
(Moaks' Van Santvoords' Pleadings, page 719 ; Maxwell on
Code Pl. 559; Bliss Code Pl. §396; *Hauswirth* v. *Butcher*, 4
Mont. 308.)

II.   Not only is it alleged in the answer and admitted by
the replication that the 142 head of horses bid in by and
knocked down to Kier were not sold, but that fact appears
from the testimony of every witness who was present at the
sale.   Furthermore, they are exactly the facts recited in
*Rader's Administrator* v. *Maddox*, in the supreme court of
the United States, (150 U. S. 130,) and which that august
tribunal declared did not constitute a sale.   Not an authority
can be found which holds that such facts would constitute a
sale, but if every authority in the books was in direct conflict
with the decision of the supreme court of the United States on
this question, that decision would still be controlling in every
subsequent stage of the case.   The very court that made the
decision would be bound by it, even though upon a fuller
argument or more deliberate consideration of the facts on a
second appeal it might be of the opinion that it was erroneous.
If upon a second appeal the same state of facts substantially

is presented as upon the former appeal, the former decision settles the law of the case and is conclusive. (*Pollock* v. *McGrath*, 38 Cal. 667 ; *Lick* v. *Diaz*, 44 Cal. 479 ; *Gates* v. *Salmon*, 46 Id. 861 ; *Creighton* v. *Hershfield*, 2 Mont. 169 ; *Daniels* v. *Insurance Company*, 2 Mont. 500 ; *Barkley* v. *Tieleke*, 2 Mont. 433; *Palmer* v. *Murray*, 8 Mont. 174; *Kelley* v. *Cable Co.*, 8 Mont. 440; *Davenport* v. *Kleinschmidt*, 8 Mont. 467.)

III.    With reference to the instructions given in this case, we may say generally, that an instruction, which considering the testimony and the nature of the case is liable to mislead the jury, should not be given even though the principle of law therein stated may be correct, as an abstract principle. (*Huntoon* v. *Lloyd*, 7 Mont. 365 ; *Boucher* v. *Mulverhill*, 1 Mont. 306.) The instruction must be applicable to the case made and warranted by the testimony. (*Dupont* v. *McAdow*, 6 Mont. 234 ; *Brownell* v. *McCormick*, 7 Mont. 12 ; *Kelley* v. *Cable Co.*, Mont. 70.)

*Toole & Wallace*, for Respondent, Maddox.

1.    On the former trial only the defendant's evidence was before the court while on this trial the whole case was submitted to the jury and no characterization of the result of a part only of the defendant's present case or evidence could be said to be the law of the case as applied to our proofs, which were never before the United States supreme court and which the jury by their verdict found to be the truth as to the transaction. By reason of these differences so far as the defendant's case alone is concerned, the decision of the United States supreme court is no longer the law of the case. The rule stated by appellants has no application when the evidence on the second trial is different from that which was before the appellate court. (Hayne New Trial, p. 877, § 291 and cases cited.) If the cause be remanded for a new trial, the parties have the right to introduce new evidence and establish a new state of facts, when this is done the decision of the court of last resort ceases to be the law of the case. (1 Herman on

Est. p. 118.)    Appellants claim the benefit of so much of the
opinion of the United States supreme court as seems to hold
that the facts did not constitute a sale but ignore that portion
of the decision which especially says :    "It may be that this
case may turn somewhat on whether the sheriff and plaintiff
understood and intended that the payment of the money was
in fact a transfer by him to them of the deposit or merely a
payment on account."    A party cannot claim the benefit of a
portion of a decision as the law of the case.    He must accept
all of the qualifications stated in the opinion.    (Hayne New
Trial, p. 878 ; *Mulford* v. *Estudillo,* 32 Cal. 137.)    When
new evidence is introduced on the second trial and a new
state of facts established or the issues changed by reason of
amendments, the decision of the appellate court ceases to be
the law of the case.    (*Dodge* v. *Gaylord,* 53 Ind. 365, 369 ;
*Pressly* v. *Lamb,* 105 Ind. 171, 179 ; *Ellston* v. *Kennicott,*
52 Ill. 272 ; *Lane* v. *Starkey,* 20 Neb. 586 ; *Bloomfield* v.
*Buchanan,* 14 Ore. 181 ; *Klauber* v. *San Diego S. C. Co.,*
98 Cal. 104.)

II.    To have ratified any alleged arrangement made by
Smith, Maddox must have received the money paid by Rader
to him, as money representing the Kier deposit and must have
so received it, with a full knowledge of the facts as alleged in
the answer, or with a determination without inquiry to assume
the responsibility of the alleged arrangement.    (*Fox* v. *Jack-
son,* 8 Barb. 355 ; *Adam* v. *Freeman,* 9 Johns 118 ; *Lewis* v.
*Reed,* 13 M. & W. 834 ; *Hyde* v. *Cooper,* 26 U. T. 552.)

III.    The objections to the admission of alleged incompe-
tent testimony, with a few exceptions, fail to state the ground
of objection and are therefore insufficient to entitle them to
review on appeal.    (*State* v. *Black,* 15 Mont. 148 ; *City of
Helena* v. *Albertose,* 8 Mont. 499 ; *Territory* v. *Bryson,* 9
Mont. 32 ; *Tucker* v. *Jones,* 8 Mont. 225.)

*H. E. Thompson* and *Carpenter & Carpenter,* for Respond-
ent Gaddis.

DE WITT, J.—The gist of appellants' contention is that the

decision of the United States supreme court was the law of the case for the district court and now for this court, and that the law of the case, as they understand it, was disregarded by the district court in various rulings, to which they duly excepted and which they have reserved for review on this appeal.

We will start more clearly if we first define what is our understanding of the decision by the supreme court of the United States as the law of the case. On the first trial all the testimony offered by the defendants was excluded from consideration, and judgment was rendered by the court in favor of plaintiff and intervenor. (9 Mont. at page 134.) In this condition the case came before the United States supreme court. That court said that therefore it would be assumed by them that the facts were as this excluded testimony tended to prove they were. (150 U. S. at page 130.) There was, therefore, no rebutting testimony by plaintiff or intervenor to be considered by the supreme court. But upon this second trial there was rebutting testimony. The proffered testimony of the defendants was not taken to be the facts. All the testimony went to the jury. They passed upon all the facts. Furthermore, this testimony thus before the district court, and before us now, discloses facts, or evidence tending to prove facts, that were not before the court on the other appeal. As to a new state of facts, or a state of material facts newly in evidence, the former decision of the court is not the law of the case. (*Creighton* v. *Hershfield,* 2 Mont. 169 ; *Daniels* v. *Insurance Co.,* 2 Mont. 500 ; *Palmer* v. *Murray,* 8 Mont. 174 ; *Kelley* v. *Cable Co.,* 8 Mont. 440 ; *Davenport* v. *Kleinschmidt,* 8 Mont. 467 ; Hayne on New Trial and Appeal, § 291.)

The United States supreme court did not hold in its opinion that there was no completed sale made by Rader to Kier. It is said in the opinion that no completed sale was made, but this is *obiter,* for the court after making this remark leaves the subject with this language : "But it is unnecessary to pursue any inquiry in this direction, for upon a very clear

rule of law the mortgagees are estopped from maintaining this action.'' (150 U. S. at p. 130..) . The decision of the supreme court was in fact based upon the opinion of that tribunal that the receipt by Maddox of $1,752.15 was a ratification by him of the alleged acts of his agent Smith, and that Maddox was estopped to deny the authority of Smith. But even this view was hedged by the supreme court when they say in the opinion : ''It may be that this case turns somewhat on whether the sheriff and plaintiffs understood and intended that the payment of this money was in fact a transfer by him to them of the deposit, or merely a payment on account ; but even if this be so, the question was one of fact to be settled by the jury, and should not have been disposed of by striking out all the testimony, and withdrawing the case from the jury.'' (150 U. S. 131.)

This, as the supreme court says, was a question of fact for the jury to determine. It was taken from the jury by the action of the court on the first trial. It was not taken from the jury on the second trial, but was submitted with appropriate instructions.

Therefore, by the opinion of the supreme court of the United States, three questions seem to us to have been left open for the second trial, viz :

First, whether Rader treated the transaction as a completed sale ;

Second, whether Maddox received the deposit of said $1,752.15, he and the sheriff understanding that it was intended that the payment of this money was in fact a transfer to him of the deposit or merely a payment on account ; and

Third, whether Maddox received this $1,752.15 along with the other money paid to him by Rader with knowledge of an agreement between his agent, Smith, and Rader and Kier, such as is set out in defendants' answer, that is to say the alleged agreement that Kier's deposit on the horses, bid in by him, and the horses, should be forfeited to the mortgagees in case full payment were not made.

These questions were submitted to the jury by appropriate instructions.

In treating these questions left open by the decision of the United States supreme court, it is necessary to first inquire whether the defendants made out their defense set up in their answer, and to understand clearly just what that alleged defense was. As it appears by the answer it was this, namely: that the agreement made at the time of the sale between Rader, sheriff, Kier, bidder, and Smith, mortgagee's agent, was that, in the event of Kier's failure to pay the balance on his bid, the $1,752.15 already paid in by him to the sheriff, should be forfeited to the mortgagees and that the horses should be retained by Rader on account of the mortgagees. They then further contend that as Rader paid the $1,752.15 to Maddox and tendered to Maddox the horses, and that as Maddox accepted the money, although he refused the horses, this was a ratification by Maddox of the agreement pleaded in the answer and claimed to have been proven, and that, therefore, under the law of the case as decided by the United States supreme court, the ratification by Maddox and his estoppel are established. Appellants state in their brief that this, their affirmative defense, was fully established. They do not recite the testimony which they claim establishes that defense, but they refer to the pages of the transcript at which they claim is found such testimony. But an examination of this testimony referred to, and the other testimony in the case does not, in our opinion, sustain the appellants' contention. This testimony does not fully establish their position. Indeed, if there is not a preponderance of the testimony against them, as it seems to us there is, there is at least a wholly substantial conflict in the evidence on this point. The respondents claim that the evidence, instead of proving an agreement between Rader, Kier and Smith as set up in the answer, does in fact prove another agreement to wit: that instead of the $1,752.15 and the horses knocked off to Kier to be forfeited to the mortgagees, the agreement was that the money should be forfeited to the sheriff, and that the sheriff should retain the horses himself, and that the money was so taken by the sheriff to cover the expenses of a re-sale of the horses, and that the

horses were to be retained for the purpose of reselling them. We think there is ample testimony, and indeed probably a preponderance of it, to the effect that the agreement was as claimed by the respondents.

There being at least a substantial conflict of testimony upon this point, the finding of the jury cannot be disturbed on this ground.

And it is, therefore, for the purposes of this review, not true that the defense set up by the appellants was fully established. We have examined the evidence upon this point with care, and, while some of it is indefinite and while, perhaps, there are some contradictions, there is ample evidence to the effect that Smith, the agent of Maddox, did not agree that the money should be forfeited to Maddox, or that the horses should be held by the sheriff for him, but on the contrary, the most that Smith ever did as the agent of Maddox was to consent that the sheriff should receive the money to cover the expenses of a re-sale and should himself hold the horses for that purpose.

We stop to note here that Rader himself treated the transaction with Kier as a completed sale, for he proceeded to accept from Kinyon, the mortgagor, a sum of money which, together with the amounts already bid on the horses, made an amount sufficient to pay the whole mortgage debt. Upon receiving this money from Kinyon he released to Kinyon all the horses unsold, and paid to Maddox the amount of money which he had collected less the costs and expenses of making the sale. Rader's construction of that transaction seems to us perfectly clear.

We then come to the question of what, if anything, Maddox ratified by receiving from the sheriff a part payment in the sum of $3,192.93. Maddox did not commit any act of ratification by receiving any of the horses which had been struck off to Kier, for he refused to.accept them. We must bear in mind that appellants contend that Maddox thus ratified what they claim in their answers were the acts of his agent Smith, but, as observed above, the testimony did not establish that

the acts of the agent Smith were those which appellants contend they were, that is to say, there was not an agreement between Rader, Smith and Kinyon that the money paid by Kier should be forfeited to Maddox, and the horses retained on account of Maddox.   It is then claimed by respondents that Maddox in receiving the money could not ratify an agreement which was not made by his agent.   It is not established by the evidence that Maddox received the money with the understanding that he received it under the agreement set up in appellants' answer.   The intention and understanding with which he received this money was a material fact in the case, as said in the United States supreme court in its decision, and that question was submitted, as we think properly, to the jury. We do not say that the evidence was all with the respondents on these matters, but it is certainly the fact that there was substantial testimony to sustain the verdict of the jury in these respects.   It is not necessary to trace this question in its various phases as it was raised upon the trial.   This statement of our conclusion is sufficient to cover the point wherever it appears in the record

There is another matter as to the law of the case upon this appeal.   It is the law of the case as declared by this court, 9 Mont. 126, that by the delivery of the mortgage to the sheriff, for the purposes of selling the property, he had authority to sell only for cash.   This law of the case is not disturbed by the decision of the United States supreme court.   Therefore, whatever Smith as Maddox's agent may have done in agreeing, or attempting to agree, to any kind of a sale other than for cash was beyond his authority as agent.   The appellants rely upon Maddox's ratification, that is to say, a ratification of that which they claim was the nature of Smith's acts.   But Smith's acts in the premises, as shown by the evidence sufficient to sustain the verdict, were materially other than appellants claim they were.   Therefore, if Smith agreed to that which he had no authority to agree to, he did not in any event agree to that which appellants claim he did, and therefore Maddox did not ratify such claimed agreement, because he could not ratify that

which Smith had not performed.    Maddox is, therefore, not estopped.   This disposes of the gist and main contention in the case.

The appellants contend that there was a departure in the pleading between the complaint and the replication.    We are not of the opinion that there was any departure.    But the manner in which this question was raised was by a motion to strike out a portion of the replication for the alleged reason that it was a departure from the complaint ; but the motion does not pretend to point out in what the departure consisted. Under the general principles applicable to motions and the pointing out the grounds of the same, we are of opinion that the district court was justified in ignoring the motion which did not in any way indicate the grounds of the same.

There were a very great many objections to testimony.    In overruling these objections appellants contend that the court erred.    Almost all of the objections can be considered as properly overruled, because they do not point out the grounds upon which appellants objected.    (*State* v. *Black*, 15 Mont. 148, with cases there cited.)    It may be that some immaterial testimony was allowed in the case, and possibly some testimony that was incompetent, but as to all of it we are of opinion either that the objection was not sufficiently made, or, in the cases where it may have been sufficiently made, there was no error which was sufficiently prejudicial to justify us in reversing the judgment.

Much of the argument in the brief is made upon the instructions of the court.    We are of opinion that the instructions fairly presented to the jury the issues set up in the pleadings and brought before the jury by evidence.    The court instructed upon these issues consistently with the view that we have above expressed as to what was the real gist of the action.

We have discussed this appeal from the point of view of the plaintiff only.    It is sufficient to say that, as appellants themselves remark, the case of the intervenor must go with that of the plaintiff.    It is therefore ordered that both as to intervenor

and plaintiff the judgment and order denying a new trial are affirmed.

*Affirmed.*

PEMBERTON, C. J. concurs. HUNT, J., being disqualified takes no part in the foregoing opinion or decision.