WASTL, RESPONDENT, v. MONTANA UNION RAILWAY CO., APPELLANT.

[No. 1,139.]

[Submitted January 27, 1900. Decided May 14, 1900.]

*Second Appeal—Former Decision—Law of the Case—Statute —Repeal—Effect—Rights Accrued—Master and Servant— Personal Injuries — Negligence — Nonsuit — Questions for Jury— Verdict— Conclusiveness—Limitation of Actions—* *Review—Record—Presumptions—Instructions.*

1. On a second appeal the appellate court is bound by a former decision on points necessarily determined, but on matters not essential, or questions not considered, it is not bound.
2. Compiled Statutes 1887, Sec. 697, giving to one employee injured by the negligence of a superior a right of action against the master, was repealed by Constitution, Art. XV, Sec. 11. Constitution Schedule, Sec. 9, provides that all causes of action, claims and rights existing at the time of the admission of the state into the Union shall be enforced and protected under the laws of the state. *Held,* that rights which had accrued under Section 697 prior to its repeal were preserved by the saving clause of the constitution to be enforced under the laws of the state.
3. The evidence in an action for personal injuries showed that plaintiff was employed at defendant's roundhouse as night helper, to do work required by his superior, the hostler in the yard. The hostler, desiring to move an engine to the roundhouse, directed plaintiff to turn the switch. Plaintiff had no torch (having been forbidden to use one), and it was so dark he could not tell, when he got off the engine to turn the switch lever, whether he was between the rails or not. While plaintiff was stooping to find the switch lever, without looking to see if the engine was coming, the hostler, without any signal, started the engine, to avoid a collision with an approaching train, and plaintiff was run down and injured. It was customary for the helper to signal the hostler by hallooing when the switch was turned, and plaintiff knew that it was defendant's custom to run engines about the yard at night without signals or lights. *Held,* it was for the jury to say whether, under all the circumstances, defendant's hostler was negligent, and whether plaintiff was guilty of contributory negligence, and that, therefore, a motion for nonsuit was properly denied.
4. A verdict on conflicting evidence will not be disturbed on appeal where there is sufficient evidence to sustain it.
5. An alleged error in admitting evidence in support of a cause of action to which the defense of the limitations has been properly interposed cannot be reviewed in the absence of a request for instructions directing the jury to disregard it.
6. Code of Civil Procedure, Sec. 1080, Subds. 7. 8, provide that all instructions given must be filed together with those refused, and that the instructions given, and the modifications thereof, and the refusal to give instructions shall be deemed excepted to, and no bill' of exceptions is required. Sections 1151, 1176 and 1196 provide that instructions are deemed to have been excepted to, and no bill of exceptions is required, and that the judgment roll, containing among other papers "all orders, matters and proceedings deemed to have been excepted to without a bill of exceptions," constitutes the record on appeal. *Held,* that instructions were properly in the record for review when made a part of the judgment roll, and that it was unnecessary to include them in the bill of exceptions.

7. Under Code of Civil Procedure, Sec. 3266, Subd. 15, declaring that the *prima facie* presumption is "that official duty has been regularly performed," it will be presumed, in the absence of a showing to the contrary, that instructions found in the proper place in a record on appeal, with proper indorsements thereon, were put there by the trial court and its officers.

8. Instructions given or refused are properly in the record on appeal when identified by the trial judge, and made a part of the judgment roll, though they are not signed by the party asking them, as required by Code of Civil Procedure, Sec. 1080.

9. An instruction in an action by an employee for personal injuries that, although the plaintiff was negligent, he is not precluded from a recovery unless his negligence was "the" proximate cause of the injury, is erroneous, since the jury can infer from the use of the definitive "the" that the plaintiff, though guilty of negligence which could be called "a" proximate cause of the injury, should not be barred unless his negligence was the sole cause of the injury.

MR. JUSTICE HUNT dissenting.

Appeal from District Court, Silver Bow County; William Clancy, Judge.

ACTION by Peter Wastl against the Montana Union Railway Company. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

## STATEMENT OF THE CASE.

This is an action for damages for personal injuries alleged to have been sustained by the plaintiff through the negligence of the defendant. A judgment for the plaintiff was reversed on a former appeal, and the cause was remanded for a new trial. (17 Mont. 213, 42 Pac. 772.) Before the second trial in the district court the complaint was amended so as to make more specific the allegations of negligence on the part of defendant. It is alleged by plaintiff that on April 15, 1889, the defendant, a corporation organized under the laws of Montana, was engaged in operating its railroad in Silver Bow county, using in connection therewith, at the city of Butte, its depot, tracks, switches, switch yard, engines, and other necessary appliances; that the plaintiff was in its employ as a laborer, his ordinary duties requiring him to wipe and coal engines, and to perform such other tasks as might be directed by the boss in the roundhouse or the hostler in the yard; that it was also plaintiff's duty, in the absence of the regular helper, and when ordered by the hostler, to aid the hostler in the movement of engines about the yard by opening and closing the necessary switches; that plaintiff had no experience what-

ever in turning switches,—a fact well known to defendant,—
and that defendant had wholly failed to instruct him how to
perform this task by the promulgation of suitable rules, or by
other means, so that he might avoid the danger incident there-
to; that about 9 o'clock p. m. on April 15, 1889, the regular
helper being absent, the hostler, as the superior of plaintiff,
directed the plaintiff to get upon an engine which was stand-
ing on a side track in the yard, and assist in taking the engine
to the roundhouse by getting off and turning the switches
whenever the engine stopped; that the night was dark; that
the yard was not lighted; that the plaintiff was not permitted
to take a light; that the engine went west to a point near the
first switch, where it stopped; that thereupon the plaintiff,
getting off, went eastward, walking between the rails, to turn
the switch, and, giving his attention entirely to his task, was
stooping down in the darkness, looking for the switch lever;
that while he was in this position the hostler, without giving
any signal with the bell or whistle, or by other means, re-
versed the engine, and ran it back towards the east upon and
over the plaintiff, inflicting upon him serious and permanent
injuries, with the result that he has since that time been un-
able to perform manual labor and to earn a living for himself
and family; and that the said injuries were wholly without his
fault.

The answer denies all the material allegations of the com-
plaint; alleges that the injuries of plaintiff were due to his
own negligence; and sets up a special affirmative defense that,
in so far as the plaintiff seeks to recover of defendant upon
the ground that defendant had failed to instruct him how to
turn switches, and to promulgate suitable rules to guide him
in the performance of this duty, the plaintiff's cause of action
is barred by the provisions of Section 47 of the Code of Civil
Procedure of the Compiled Statutes.

The jury found for the plaintiff, assessing his damages at
$10,000, and judgment was entered for that amount. From
this judgment, and an order denying a new trial, defendant
prosecutes this appeal.

*Mr. John F. Forbis, Mr. G. B. Winston, and Mr. William Wallace, Jr.,* for Appellant.

The plaintiff's contributory negligence bars recovery. (*Aerkfetz* v. *Humphries,* 145 U. S. p. 418; *Osborn* v. *Coal Co.,* 71 N. W. 814; Sherman & Red. on Negl. (5th Ed.) Sec. 476, p. 822, cases in notes 16 and 18, Sec. 61, p. 87, note 2; *Clark* v. *Ry. Co.,* 11 Pac. 134; Sherman & Red. on Negl., Sec. 185, foot.) The giving of Instruction No. 3 was error. (*Ry. Co.* v. *Massig,* 50 Ills. App. 666; *Ice & Storage Co.* v. *Scully,* 63 Ills. App. 150; *Ruchinsky* v. *French,* 46 N. E. 417, 418; *Ryan* v. *Armour,* 47 N. E. 60, 61; *Henion* v. *Ry. Co.,* 79 Fed. 903, 908; *Osborn* v. *Coal Co.,* 71 N. W. 814, 815; *Fisher* v. *Ry. Co.,* 43 N. W. 926; *Payne* v. *Ry. Co.,* 31 S. W. 885, 888, left middle; Sherman & Red. on Negl., Sec. 96, p. 146, Sec. 94, p. 144, note 2, Sec. 61, p. 88, note 6; *Ry. Co.* v. *Swisher,* 61 Ill. App. 311.) There was error in charging the jury that plaintiff might recover for hostler's negligence. (*Knox* v. *Southern Ry. Co.,* 47 S. W. 491; *Clay* v. *Chicago, B. & Q. Ry. Co.,* 56 Ills. App. 235; *Ry. Co.* v. *Massig,* 50 Ills. App. 666; *Ry. Co.* v. *Whitaker,* 33 S. W. 716, 717; *Ry. Co.* v. *Hyde,* 56 Fed. 188, 193, 194; *Watt* v. *Hart,* 34 Pac. 423, 426; *Adams* v. *Iron Cliff Co.,* 44 N. W. 270, 276; *Goodwell* v. *M. C. Ry.,* 45 Pac. 210; *Hastings* v. *M. U. Ry. Co.,* 46 Pac. 264, 265.) The acts of negligence alleged, other than the hostler's acts, are barred by limitation. (*Chicago Ry. Co.* v. *Scanlon,* 48 N. E. 826; *Benton* v. *C. Ry. Co.,* 41 Fed. 744–750; *Wingert* v. *Carpenter,* 59 N. W. 662. (Personal injury cause based on statute of one state, amended to cause on statute of another state.) *Alabama G. S. R. Co.,* v. *Smith,* 1 So. Rep. 723. (Personal injury, forcible ejection of passenger; amendment, voluntarily leaving train, misled by porter calling wrong station.) *Buntin* v. *Ry. Co.,* 41 Fed. 744. (Damages, flooding land by embankment; amendment, embankment threw water against a bridge afterwards built, so as to collect drift and flood.) *Hester* v. *Mullen,* 12 S. E. Rep. 447. (Slander; .

new words in amendment.)   *Sicard* v. *Davis*, 6 Peters, 124.
(Ejectment; different demise in amendment.)   *Barker* v. *Ry.
Co.*, 8 So. Rep. 466.   (Personal injury, husband joined by
amendment, necessary should join under statute.)   *Anniston
& A. R. Co.* v. *Ledbetter*, 9 So. Rep. 73.   (Loss of goods as
common carrier; amended to warehouseman.)   This question
was presented properly by pleading the statute in the answer
to the amended matters.   (Sec. 749, Code of Civil Procedure,
Montana; *Jeffersonville R. Co.* v. *Hendricks*, 41 Ind. 48;
*Pennsylvania Co.* v. *Sloan*, 125 Ills. 72.)   It was error to
allow the jury to return a verdict on either of the amended
grounds of negligence.   (*McDermott* v. *Railroad Co.*, 43
Pac. 248, 249; *Ruchinsky* v. *French*, 46 N. E. 417, 418.)
See also:  *Ryan* v. *Armour & Co.*, 47 N. E. 60, 61. (Where
party injured had worked only one and one-half days.) *Ber-
rigan* v. *Ry. Co.*, 30 N. E. 57; *Morgan* v. *Iron Co.*, 31 N.
E. 234; *D. L. & W. R. R. Co.* v. *Voss*, 41 Atl. 225; *C. & W.
R. Co.* v. *Massig*, 50 Ills. App. 666; *Ice Co.* v. *Scully*, 63
Ills. App. 150.)   The verdict was excessive.   (*Kennon* v.
*Gilmer*, 5 Pac. 855: 8 Am. & Eng. Enc. of Law, 2nd Ed.,
pp. 632, 633.)

*Mr. T. J. Walsh*, *Mr. John A. Shelton*, and *Mr. James M.
Hinkle*, for Respondent.

MR. CHIEF JUSTICE BRANTLY, after stating the case,
delivered the opinion of the Court.

The appellant asks for a reversal of the judgment and order
upon the following grounds:   That the trial court erred in
refusing to direct a nonsuit; that the evidence is insufficient
to justify the verdict; that the trial court admitted improper
evidence; that it erred in submitting certain instructions to the
jury and in refusing to submit others requested; and that the
verdict is excessive.

1.   This suit was brought under Section 697, Fifth Divis-
ion, Compiled Statutes 1887.   This section was construed and
applied in *Criswell* v. *Montana Central Railway Co.*, 17

Mont. 189, 42 Pac. 767. The judgment in that case was afterwards reversed on rehearing upon a constitutional question which was not urged on the first hearing (18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554), but the opinion of the Court there expressed as to the proper interpretation of this section was in no wise changed or modified. As already noted in the foregoing statement, a judgment for the plaintiff in this cause was reversed upon a former appeal, and a new trial granted. The contention is now made by counsel for respondent that all the questions presented upon this appeal, except the one raised by the assignment last mentioned and some arising upon the correctness of particular instructions, presently to be noted, were involved in the former appeal, and, therefore, that the conclusions reached by the Court at that time are the law of the case, and binding upon us on this appeal. Counsel even go so far as to insist that this principle extends to all matters that the Court should, or might have, properly considered and determined on the former appeal, whether an opinion was expressed thereon or not. As we understand it, however, this Court has never gone further in the application of the rule than to hold that it is bound by a former decision upon all points necessary to a determination of the cause as it was then presented. On matters not essential, or questions incidental or not considered, the court is not conclusively bound upon the second appeal. In *Palmer* v. *Murray*, 8 Mont. 174, 19 Pac. 553, referring to a former appeal in the same case (6 Mont. 125, 9 Pac. 896), the Territorial Supreme Court said: "That decision has now become the law of the case in all of its stages, and cannot be departed from, so far as the questions of law or fact are concerned which were therein presented for review or decision." The rule has been repeatedly invoked and applied in this jurisdiction, both before and since the decision in the case cited. (*Creighton* v. *Hershfield*, 2 Mont. 170; *Daniels* v. *Andes Insurance Co.*, *Id.* 500; *Kelley* v. *Cable Co.*, 8 Mont. 440, 20 Pac. 669; *Davenport* v. *Kleinschmidt*, 8 Mont. 467, 20 Pac. 823; *Priest* v. *Eide*, 19 Mont. 53, 47 Pac. 206, 958; *Maddox* v. *Teague*, 18 Mont. 512, 46

Pac. 535; *Murray* v. *Polglase*, 23 Mont. 401, 59 Pac. 439.)
But, though the rule may be invoked even in support of an
erroneous ruling upon the former appeal (*Davenport* v. *Klein-
schmidt, supra*), its application will be strictly limited to the
points necessary to the determination of the cause. It cannot
be successfully invoked to estop the appellate court in a case
where a different state of facts is shown, or questions of law
are presented, a decision of which was not necessary or ger-
mane to the former opinion. (*Priest* v. *Eide, supra*; *Klau-
ber* v. *San Diego Car Co.*, 98 Cal. 105, 32 Pac. 876; *Barney*
v. *Winona, etc. Railroad Co.*, 117 U. S. 228, 6 Sup. Ct. 654,
29 L. Ed. 858.) So that, while we recognize the rule as well
established in this jurisdiction, we are not disposed to extend
it beyond the exigencies which demand its application.

Looking into the record as presented upon the former ap-
peal, and to what was said by this Court in that decision, we
find that a majority of the justices agreed to a reversal of the
case upon two paragraphs of the charge of the trial court,
designated as instructions 7 and 15. Mr. Justice DeWitt was
disqualified, and took no part in the decision. The Chief
Justice wrote the opinion, but Mr. Justice Hunt concurred
therein specially, and upon the sole ground that the charge
was erroneous in the particulars mentioned. From an exam-
ination of these parts of the charge, it appears that the trial
court misstated the rule of law by which the jury should be
guided in determining the preponderance of the evidence, and
invaded the province of the jury by calling attention to cer-
tain of defendant's witnesses by name, and, to this extent,
improperly commenting on the weight of the evidence. The
sufficiency of the evidence to withstand a motion for nonsuit,
or to sustain the verdict, cannot be held to have been within
the purview of the concurring opinion, and was, therefore, a
matter upon which no opinion was expressed. This fact,
however, is to be noted: The case of *Criswell* v. *Montana
Central Railway Co., supra*, was under advisement by the
court during the time this case was considered. As stated al-
ready, it involved the construction and application of Section

697, Fifth Division of the Compiled Statutes of 1887,—the fundamental question involved in this case, and presented by the record in the former appeal. The two opinions were handed down the same day. As the decision in the former was by all the justices, and as the two cases may be looked upon as one, in so far as this section of the statute was involved, a construction of the statute being necessary to this case also, the decision in the former case on this point may fairly be treated as the law of this case. In fact, the construction given to the statute in the *Criswell Case* was referred to and adopted as applicable to the present case, the court deeming it unnecessary to repeat the discussion and decision in the *Criswell Case*. Therefore, though it subsequently appeared that a construction of the statute as applied to the facts in the *Criswell Case* was entirely unnecessary, yet the two cases were so connected that the law as declared in that case became the law in this one, and we feel bound to recognize and apply it as such. And we are the more willing to follow the construction given to the statute in that case because we regard it as entirely just. The constitutional question upon which the *Criswell Case* was reversed has no application to this case, as that case arose after the constitution was adopted, while the present one arose prior to that time. Counsel for appellant contends now that, as the Constitution abrogated the statute, it necessarily resulted that the plaintiff's right of action under it was thus entirely destroyed. Respondent insists that this question was also disposed of on the former appeal, and that a consideration of it at this time is thus foreclosed. This position is not tenable, however, for the question was not then brought to the attention of the court, nor was it considered. In short, the only point in the case which is not open for consideration on this appeal is the construction of the section of the statute above referred to. All the other questions properly presented upon this record and urged in his brief, counsel for appellant is entitled to have determined. We have given respondent's contention as to the law of the case more attention than it, perhaps de-

serves; but, owing to the peculiar situation of the case because of its association with the *Criswell Case*, we have deemed it proper to give it more than a passing notice.

2.    At the close of plaintiff's proof, the defendant moved for a nonsuit on the several grounds: That plaintiff had failed to show negligence on the part of defendant; that the proof showed affirmatively that the injury to plaintiff was the result of unavoidable accident, and the plaintiff contributed thereto by his own negligence at the time of the accident; and that the accident was caused by the negligence of plaintiff's fellow servant.

The evidence tended to show the following: Plaintiff had been in the employ of the defendant in the yard in the city of Butte about seven months.    His business was to wipe and coal engines, give them water and sand, clean out the ashes, and to do such other work as was directed by the boss in the roundhouse and the hostler in the yard.    The duty of turning switches also fell to him in the absence of the regular helper. The duties of the hostler were to receive engines as they came into the yard, to see that they were properly cleaned, supplied with coal and sand, and put away, and to deliver them again to the proper engineer.    He had authority to discharge, but not to employ, laborers.    On the evening of April 15, 1889, the regular helper was absent.    A switch engine which had been coaled by plaintiff and others was standing on a side track at the coal bins on the north side of the yard.    The hostler desired to move it to the roundhouse, which was on the south side.    To do this it was necessary to run to the west in order to shift it to the track running to the roundhouse, and then to run east on that track.    The hostler directed the plaintiff to go with him, and turn the switches.    It was customary for those performing this duty for the hostler to ride upon the footboard of the engine.    When it stopped, they would get off, and, after turning the switch, signal the engineer by hollowing.    While in the yard, the engines did not usually carry a headlight.    This was the case only when an engine was brought in after dark.    It was not customary to use the bell

or whistle for a signal. On the evening in question the engine had no headlight. The plaintiff rode on the east end of the engine. The engine backed west, and when it stopped he got down, and went eastward to look for the switch. It was dark, and there was so much smoke from the engine that plaintiff could not tell whether he was between the rails. He stooped in the darkness to look for the switch. He had no light. The boss of the roundhouse had forbidden him to take his torch. While he was in this stooping position, the hostler, without warning, shifted the engine towards the east, in order to get it out of the way of a freight train which was approaching on the main track from the west. This was done in obedience to a signal received from towards the west. If the engine had remained standing where it was, there would have been a collision with the approaching train. Plaintiff did not look back to see if the engine was coming. He was caught by the engine, and thrown over, suffering the loss of a toe and two fingers, besides other injuries upon the head, resulting in a permanent tremor in his right hand, and frequent headaches and general weakness. The plaintiff, until about 15 days before the accident, had worked in the daytime. For these 15 days he had been doing night work. He had never turned a switch before. No one had given him any instructions about how to do this, but he had seen others do it. The switch levers were outside the rails. The plaintiff could not speak or understand English very well. He was, at the time of the accident, about 48 years old. There were no rules regulating the running of engines in the yard. The laborers about the yard and roundhouse were subject to the direction of the hostler after he came on duty at night.

The fundamental question raised by this motion is the effect, if any, wrought upon plaintiff's right of action by the repeal of Section 697, *supra*, by Section 11 of Article XV of the Constitution, as was held in *Criswell* v. *Montana Central Railway Co.*, 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554; for, as stated before, plaintiff is endeavoring to establish in this case a right founded upon the statute, and this right does

not exist unless it survived the repeal of the statute. The effect of the statute, so far as domestic railroad corporations were concerned, was to abrogate the common-law rule governing the liability of a master for an injury to his employee by the negligence of a fellow employee engaged in a common employment for a common purpose. It established in the territory the superior servant doctrine, and gave to one employee injured by the negligence of a superior a right of action therefor against the master when the injured employee was himself without fault or negligence. (*Criswell* v. *Montana Central Railway Co.*, *supra.*) This right did not exist at the common law, and, under the facts in this case and the rule as recognized and repeatedly reaffirmed in this state since the adoption of the constitution, the plaintiff could not recover; for it is clear that under this rule plaintiff and the hostler were fellow servants engaged in a common employment for a common purpose, and that the injury complained of, if not caused by plaintiff's own act, was due to the negligence of the hostler. (*Goodwell* v. *Montana Central Railway Co.*, 18 Mont. 293, 45 Pac. 210; *Hastings* v. *Montana Union · Railway Co.*, 18 Mont. 493, 46 Pac. 264; *Mulligan* v. *Montana Union Railway Co.*, 19 Mont. 135, 47 Pac. 795.) We think, however, that a complete answer is found to the question raised and the contention of the appellant in the provision contained in Section 9 of the Schedule of the Constitution. This provision is: "All writs, processes, prosecutions, actions, causes of action, defenses, claims and rights of individuals, associations and bodies corporate existing at the time the state shall be admitted into the Union, shall continue and be respectively executed, proceeded with, determined, enforced and protected under the laws of the state." Here is an express provision that all causes of action, defenses, claims and rights, without exception, of all classes of individuals, shall continue and be enforced and protected under the laws of the state. No distinction is made between statutory rights and those existing at common law, nor between those arising out of torts and those founded upon contract. The section seems to have been

inserted in the schedule—which is, so to speak, a general saving clause to the Constitution—*ex industria*, to meet just such cases as the present, and to preserve all rights already accrued, and either in action or capable of being enforced by the ordinary remedies provided for this purpose. The framers of that instrument evidently intended that the territorial government should be succeeded by that of the state with the least possible friction and disturbance. While realizing that many of the statutes of the territory were not suitable to the changed conditions under the Constitution, and would be abrogated thereby (Constitution Schedule, Sec. 1), they intended also that the rights of the individual citizen should be preserved and enforced just as effectively as if the Constitution had not been adopted. There is nothing in the section showing any intention to make any exception. The language is general, and includes all rights and claims, whatever be their character. Therefore the contention of counsel that the repeal of the statute destroyed also the right already accrued thereunder cannot be sustained. The Constitution operated upon the statute so as to prevent other rights from accruing thereunder; but under its saving clause, as expressed in the section of the Schedule quoted, the right already accrued was preserved to be enforce "under the laws of the state," whatever they might be; for, after the right became fixed, its enforcement no longer depended upon the statute, but was to be governed by the general provisions of the Code suitable to the enforcement of all rights, without regard to their origin. This being our conclusion, it is not necessary to discuss what would have been the effect upon plaintiff's right in the absence of this section of the Schedule. An inquiry upon this subject would necessarily lead to an examination of the question whether the right asserted by the plaintiff under the statute is "property" within the meaning of the fourteenth amendment of the Constitution of the United States, and whether the section of our Constitution (Section 11, Art. XV), which repealed the statute, is within the malediction of the first section of that amendment. We are content to omit this inquiry.

Upon the other points made by the motion, we think the motion was properly denied. Under the law of this case (*Criswell* v. *Montana Central Railway Co.*, *supra*) it is clear that there is a sufficient showing as to the negligence of the hostler to go to the jury. He was bound to exercise the same degree of care towards the plaintiff as towards a passenger, and it cannot be doubted that, if the plaintiff had been a passenger, the hostler would have been bound to give some sort of signal before starting the engine. The plaintiff had a right to expect the engine to remain where he left it until he should give a signal for the start in the usual way of hollowing. Nor does the evidence show that a collision was so imminent that the hostler could not have given a signal. His act in starting the engine as he did was a departure from the ordinary course, and he should have taken extraordinary care. And though it may well be said that the plaintiff, knowing that the defendant was accustomed to run its engines about the yard at night without signals and lights, assumed all the risks incident to the ordinary conditions, it cannot be claimed that this assumption on his part contemplated also the dangers arising from conditions which could not reasonably have been foreseen by him. Nor do we think it is clear from all the circumstances of the case that the plaintiff was guilty of such negligence in getting between the rails that he is precluded from a recovery. It was dark, and the vision was obscured by the smoke emitted by the engine. He states that he could not tell whether he was without or within the rails. Besides, as we have stated, ordinarily he justly had a right to suppose that the engine would not move until he had signaled the hostler. We think it was for the jury to say whether, under all the circumstances, the hostler used that degree of care called for by the circumstances, and whether the plaintiff was sufficiently circumspect. (*Prosser* v. *Montana Central Railway Co.*, 17 Mont. 372, 43 Pac. 81, 30 L. R. A. 814; *Pyle* v. *Clark*, 25 C. C. A. 190, 79 Fed. 747.) This case is clearly distinguishable from *Aerkfertz* v. *Humphreys*, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758, in which the injury

complained of was due to a clear disregard on the part of the plaintiff of the most ordinary precautions under usual conditions.

3.   What has just been said touching the sufficiency of the evidence to go to the jury renders it unnecessary to remark upon the assignment that the evidence is not sufficient to sustain the verdict.   Viewed in the light most favorable to the defendant, it presents a case proper to be submitted to the jury upon conflicting evidence, and the finding of the jury thereon should not be disturbed.

4.   The next contention made by the appellant is that the allegations in the third amended complaint upon which the last trial was had, setting up a failure on the part of the defendant to promulgate suitable rules to guide the plaintiff in the discharge of his duties, and to instruct him therein, as culpable negligence, constitute separate and distinct grounds of recovery; and that plaintiff's right of recovery as to them is barred by the provisions of Section 47 of the Code of Civil Procedure (Comp. St. 1887).   This contention is based upon the fact that these matters are alleged for the first time in the last amended complaint, long after the limitation of the statute had run.   But, whatever may be its merits, appellant is not in position to have this question considered here.   In this state the defense of the statute of limitations can be made available only by answer or reply.   (Code of Civil Procedure, Section 558; Laws of 1899, p. 142.)   The defense was interposed in the proper way in this case, but the only attempt to present the question thus raised was by an objection to the evidence tending to show that no rules had been promulgated by the defendant regulating the running of engines and trains in the yard, the ground of the objection being that the action, so far as based upon this negligence of the defendant, "is barred by limitation, and not proper matter to introduce in evidence at this time."   This objection, not being made upon any lawful ground, was properly overruled.   The proper mode to present the question was to request an instruction to the jury directing them to disregard the evidence

on this point. No such request was made. In the absence
of it, the defendant cannot complain of the trial court for its
failure to submit the question to the jury. Indeed, upon the
record presented here, we are justified in the conclusion that
this defense was abandoned, and hence that no reference was
made to it in the instructions.

5. Another contention made by the appellant is that the
court misdirected the jury to its prejudice, and failed to give
correct instructions requested. A question of practice is pre-
sented here by objection to the consideration of the instruc-
tions, either given or refused, on the ground that they are
not properly in the record, in that they are not included in a
bill of exceptions, and are not properly identified. We find
them in the record as a part of the judgment roll, and in this
condition: Those requested by the plaintiff are together, fol-
lowing each other consecutively, properly numbered, under
the general heading ''Instructions on the Part of Plaintiff.''
Each one is marked ''Given.'' At the end of the last one
appear the words: ''(Indorsed.) Filed Apr. 8, 1897. Clinton
C. Clark, Clerk, by T. E. Booth, Deputy Clerk.'' April 8,
1897, was the date of the trial. In the same way followed
those requested by the defendant under the heading ''Instruc-
tions on the Part of Defendant.'' They are marked and en-
dorsed just as are those requested by the plaintiff, except that
in two instances additions were made at the end, which are
noted. Then follow ''Refused Instructions Offered by De-
fendant.'' These are marked ''Refused,'' and indorsed
''Filed,'' as are the others. Subdivision 7 of Section 1080
of the Code of Civil Procedure provides that ''the court shall
either give each instruction as requested, or positively refuse
to do so, or give the instruction with a modification, and shall
mark or indorse upon each instruction so offered in such man-
ner so that it shall distinctly appear what instructions were
given in whole or in part, and, in like manner, those refused.
All instructions given by the court must be filed, together
with those refused, as a part of the record.'' In the follow-
ing subdivision (Subdivision 8) it is further provided that the

charge of the court, the instructions given, and the modifications thereof, and the refusal to give instructions shall be deemed excepted to, and no bill of exceptions is required. Further, Section 1151, *Id.*, provides that the instructions and charge of the court are deemed to have been excepted to, and no bill of exceptions is required. Section 1196 *Id.*, directs what papers the judgment roll shall contain, and, among others, are enumerated "all orders, matters and proceedings deemed excepted to without bill of exceptions." The judgment roll, with other papers named, constitutes the record on appeal. (*Id.* Sec. 1176.) These provisions of the statutes set at rest any question as to the proper method to pursue to bring the instructions before this court for review. Indeed, after they pass into the hands of the trial court, the duty of preserving them and making them a part of the record devolves upon the court and its officers, and nothing further is required by the parties. The parties may, if they choose, include them in a bill of exceptions, and present them in this way, but this course is entirely unnecessary, and involves useless labor. The cases cited by counsel in support of his claim that the instructions must be contained in a bill of exceptions formally settled are founded upon different statutes from ours, and are not in point.

Neither do we think there is any force in the argument that the instructions are not properly identified as those actually given as requested, or as modified, or as actually requested and refused. We find them in the record, with certain indorsements and notations upon them. They are in the place where they should be found. These indorsements and notations upon them indicate that they are what they purport to be. There is nothing before us to show the contrary. The statute declares that the *prima facie* presumption is "that official duty has been regularly performed." (Code of Civil Procedure, Sec. 3266, Subd. 15.) Indulging this presumption, we must conclude that the instructions in the record were put there by the trial court and its officers.

But counsel insists that they are not signed by the attorneys

who requested them, in obedience to the requirement of the first part of Section 1080, *supra.* We take it that this requirement is made for the benefit of the judge of the trial court to aid him in the discharge of his duties. He could not be put in error for refusing to give instructions requested unless the party requesting them should do so in conformity with the statute; but, if he chooses not to require a strict compliance, and proceeds to identify the instructions given and refused, as well as the modification made of any of those given, as is required of him by Section 1080, *supra,* and to make them a part of the judgment roll, as in this case, his duties have been fully discharged, and the record is properly made.

The conclusion already reached that the statutory and not the common-law rule of liability applies to this case, and that the evidence warranted a submission of it to the jury upon the question of the hostler's negligence and the contributory negligence of the plaintiff, disposes of all the questions raised upon the instructions save one. This arises upon instruction 3, given at plaintiff's request, which reads as follows: ''You are instructed that if from all the evidence, you believe that plaintiff was working under the orders and directions of the hostler, and that it was his duty to obey such orders, and that at said time the defendant, by its hostler, might have avoided said injury by the use of proper signals or warning, or by having a headlight on its engine, and if, from the evidence, you further believe that at the said time defendant neglected to have said headlight, or give such warning, then you have the right to determine whether or not said neglect caused the accident; and if you believe from the evidence that it did, and that the plaintiff was without negligence, or, if negligent, that his negligence was not the proximate cause of the injury, then you should return a verdict for the plaintiff.'' Appellant complains that this instruction does not state correctly the law of contributory negligence, and that the vice of it consists in its telling the jury that, though plaintiff might be barred of his recovery by his own negligence, yet such negligence, to be a bar, must be the sole proximate cause of the injury for

which he was seeking compensation. Mr. Beach defines contributory negligence as follows: "Contributory negligence, in its legal signification, is such an act or omission on the par. of a plaintiff amounting to a want of ordinary care, as, concurring or co-operating with the negligent act of the defend-ant, is a proximate cause or occasion of the injury complained of." (Beach, Contrib. Neg. Sec. 7.) Mr. Thompson defines the phrase thus: "In order to constitute such negligence as will bar a recovery of damages, these two elements must in every case concur: (1) A want of ordinary care on the part of the plaintiff, or, where the action is for damages resulting in death, a want of ordinary care on the part of the person killed; (2) A proximate connection between this want of ordinary care and the injury complained of." (Thomp. Neg. Sec. 3, p. 1148.) The principle embodied in these definitions is that, in order that there may be any contributory negligence on plaintiff's part, there must be negligence also on the part of the defendant having a direct and proximate causal relation to the injury. Negligence proximately causing the injury is necessary to render the defendant liable. Negligence on plaintiff's part, which is a proximate cause, is necessary to bar a recovery on the ground of contributory negligence. If defendant's negligence is the sole proximate cause, there is no contributory negligence. If the plaintiff's negligence is the sole proximate cause, then no negligence is attributable to the defendant. Obviously, therefore, the negligent acts of plaintiff and defendant must concur and operate together, each contributing proximately to cause the injury complained of. If this condition does not exist, then there is no question of contributory negligence. (7 Am. & Eng. Ency. Law (2d Ed.) 373, 374; *Payne* v. *Chicago & Alton Railroad Co.*, 129 Mo. 405, 31 S. W. 885; Thomp. Neg. pp. 1148–1153.)

Applying these principles to test the instruction complained of, we must conclude that appellant's position is correct. The jury are told that, though the plaintiff was negligent, he was not precluded from a recovery unless his negligence was the proximate cause of the injury. The use of the article "the"

with its specifying and particularizing force, as opposed to the indefinite article "a," which should have been used, excludes the idea of any other concurring cause. The article "the," in the sense in which it is here employed, designates one particular from a class or number, disassociating it from others of the same class. Attention is thus called to the particular object singled out of the class, and thus individualized. The indefinite "a," used in place of it, would have meant "one" or "one of" the class, or, in this instance, one of the two contributing causes. From the particular phrase in which the definitive "the" is used, the jury could, and perhaps did, infer that the plaintiff, though guilty of negligence which could be called an approximate cause of the injury, should nevertheless be held not barred, unless the proof showed that his negligence was the sole causal agency in producing the injury. The rule thus stated for the guidance of the jury omits one of the essential elements in the definition of contributory negligence. It appearing from the proof that it was proper to submit the question to the jury, the defendant was entitled to have it submitted under a correct statement of the law. The error complained of in this instruction might possibly have been disregarded as an inadvertence, and without prejudice, had the law on this point been generally correctly stated elsewhere through the instructions; but such was not the case. Wherever this principle was referred to in the instructions, the same error was committed. We cannot say that the appellant was not prejudiced by it. (*Parrin* v. *Montana Central Railway Co.*, 22 Mont. 290, 56 Pac. 315.) It is regrettable that this case must be reversed upon a ground apparently so technical. Our only course, however, is to declare the law as we find it, without regard to any hardship that may result in this particular instance.

Let the judgment and order be reversed, and the cause be remanded for a new trial.

*Reversed and remanded.*

MR. JUSTICE PIGOTT:  I concur.

MR. JUSTICE HUNT:   I dissent; not, however, without appreciation of the difficulty of the point on which reversal is ordered, and I agree that there is carelessness in the use of words employed in the instruction deemed prejudicial.  I think, though, that the definite article "the," as used in the instruction held bad, particularized the subject of proximate cause which was being spoken of by the court, without going to the extent of limiting the jury to the consideration of one, and only one, proximate cause within the several proximate causes embraced in the general subject so particularized—that is to say, while I believe the jury were directed to the subject of proximate causes by the instruction, still there was no one special limitation within the bounds of that subject by which they were exclusively concluded.   This opinion is strengthened by the statement that elsewhere in the charge a correct definition of proximate cause was given.   I believe, therefore, that the inference of a "sole causal agency," spoken of by the Chief Justice as perhaps having been drawn by the jury, could not reasonably have been drawn, and that it involves too technical a construction of the language embraced in the instruction.   I do not approve the language of the instruction, yet I cannot think its fault was calculated to mislead or did mislead.   I think the judgment should be affirmed.